236 So.2d 681

Harold L. WISE et al.

v.

Elbert Ray WATSON, a Minor, etc.

4 Div. 384, 384-A.

Supreme Court of Alabama.

June 11, 1970.

W. H. Baldwin, Andalusia, for appellants.

Powell & Sikes, Andalusia, for appellee.

McCALL, Justice.

The bill of complaint in this case was brought by a minor, Elbert Ray Watson, suing by his father and next friend, Regenal R. Watson, against his mother, Elizabeth G. Wise, formerly Elizabeth G. Watson, and his stepfather, Harold L. Wise, to have set aside and held for naught a deed executed on September 14, 1967, by the respondent, Elizabeth G. Watson (now Wise), to the respondent, Harold L. Wise, her present husband, and to vest the title to the real property therein described in the minor complainant.

Prior to their divorce in 1963, the complainant's father, Regenal R. Watson, and mother, Elizabeth G. Watson, owned the real property constituting their homestead for their joint lives with the right of survivorship in the survivor of them, upon the death of either. When the parents became irreconciliably parted in their married life, they mutually agreed by executing a separation agreement, dated November 30, 1963, among other settlements, that custody of their minor son, the complainant, should remain with his mother, the respondent in this case, and that the father would pay stated sums and provide certain other contributions and benefits toward the support and maintenance of the mother and minor son.

In paragraph 9, of this settlement agreement, Watson agrees to convey the said home to his wife, subject to the following "restrictions" to be referred to in the deed and made a part of it, viz.:

"A. In the event that the Complainant should remarry, the property will immediately revert to the child, Elbert Ray Watson.

"B. In the event that the Complainant should remarry, she agrees to keep up the house payments as long as she occupies the property.

"C. In the event that the Complainant should fail to make the house payments and that there should be danger of the house being foreclosed, the property shall revert to the minor child, Elbert Ray Watson, and the Respondent shall have the right to make the house payments for the benefit of the minor child."

The concluding paragraph of this separation agreement is as follows:

"This agreement has been made and executed by the parties hereto on the day and date hereinabove set forth, in good faith, with full understanding of all of its provisions, and with the mutual prom- ise on the part of each to comply therewith faithfull (sic) and completely."

Regenal R. Watson and his then wife, Elizabeth G. Watson (now Wise), as grantors, next both executed and delivered a warranty deed dated December 5, 1963, purporting to convey the fee simple title to the property to Elizabeth G. Watson, as grantee, with her assuming and agreeing to pay the balance due on the outstanding mortgage lien against the property. The deed further recites:

"This deed is made subject to provisions of that certain Divorce Decree between the grantors dated December 6th, 1963, and said Decree is incorporated herein and made a part hereof as if fully set out."

The final decree of divorce dated December 6, 1963, to which the said separation agreement between the husband and wife appears to be attached, after dissolving the bonds of matrimony, between the parties adjudges and decrees as follows:

"The Complainant and Respondent have reached an agreement as to property settlement, custody and support of the minor child and said agreement is made a part hereof as if fully set out."

Thereafter, without mentioning any of the provisions, relating to the conditions under which the title to the real property might subsequently become vested in the complainant, which are contained in the said separation agreement and referred to in the deed to Elizabeth G. Watson and in the final decree of divorce, the respondent Elizabeth G. Watson conveyed said real property to the respondent, Harold L. Wise, by deed, dated September 14, 1967, containing full covenants of warranty, for a recited consideration of $10 and other valuable consideration. Actually, no money passed to the grantor, Mrs. Watson, from the respondent Wise, and said conveyance was admittedly made in contemplation of the marriage of Elizabeth G. Watson and Harold L. Wise. This deed

was recorded on the day of its execution in the records of the Probate Court of Covington County, Alabama. A week later, on September 21, 1967, the respondents, Elizabeth G. Watson and Harold L. Wise, were married to each other. The respondents contend that this conveyance was made to Wise to secure him in sums he was to expend on the subject property.

The complainant contends that the conveyance was voluntarily made in contemplation of the approaching marriage of the respondents and without any consideration for the purpose of avoiding the provisions of the separation agreement between Elizabeth G. Watson and Regenal R. Watson, or for the purpose of defrauding the complainant of the title to the real property. The respondents denied these allegations in their answer and filed a cross bill averring that when the deed was executed to Wise, it was understood and agreed between the parties that the house was in dire need of repairs, and that Wise made the repairs along with certain additions at an expenditure to him of $3,348.29. After this work was completed, the respondents with their respective children, moved into the house and have since occupied it as their home. Wise has continued to make the mortgage payments that Mrs. Wise had kept up until their marriage. The cross bill prays that the conveyance to Elizabeth G. Watson be declared an "outright conveyance" by Regenal R. Watson of his undivided one-half interest to her, but if mistaken in this that the court fix a lien on said undivided one-half interest to secure Wise for the moneys spent by him in its improvement.

The trial court set aside the deed from Elizabeth G. Watson to Harold L. Wise, divested him of title to said real property and invested it in the complainant, Elbert Ray Watson, subject to the outstanding mortgage held by Liberty National Life Insurance Company.

The court further decreed a lien against the property in favor of Harold L. Wise in the amount of $4000 for sums spent by him on the property, plus $2,094.24 for mortgage payments made by him on the property, being a total of $6,094.24, which the court offset by $3000, in the complainant's favor for the reasonable rental of the property at the rate of $150 per month, charged against the said Wise, for his period of occupancy, leaving a balance decreed to be due him of $3,094.24. The court secured this by a lien in Wise's favor against said property.

When equity's jurisdiction is invoked, minor children are wards of the court, and it is the court's duty to guard and protect the interest of its infant wards with scrupulous care. Scott v. Mussafer, 223 Ala. 153, 134 So. 857; First National Bank of Oneonta v. Robertson, 220 Ala. 654, 127 So. 221; State v. Worthington, 25 Ala.App. 511, 149 So. 707, cert. den. 227 Ala. 204, 149 So. 709. In case of divorce of the parents, equity courts have inherent power to protect the welfare of the minor children born of the broken marriage and to make appropriate allowances for them, Murrah v. Bailes, 255 Ala. 178, 50 So.2d 735; Butler v. Butler, 254 Ala. 375, 48 So. 2d 318; and, having once obtained jurisdiction over the children of divorced parents, the court retains jurisdiction during their infancy. Ex parte Ingalls, 256 Ala. 305, 54 So.2d 288; Bridges v. Bridges, 227 Ala. 144, 148 So. 816; Porter v. Porter, 216 Ala. 169, 112 So. 646.

The separation agreement which appears to have been influenced by conciliatory negotiation between the Watsons became merged into the final decree, and while said agreement ceased to operate as such, the decree is as effective as any other decree with the same terms, whether or not there was ever an agreement to that effect. Callen v. Callen, 257 Ala. 226, 58 So.2d 462; Russell v. Russell, 247 Ala. 284, 24 So.2d 124; Montgomery v. Montgomery, 275 Ala. 364, 155 So.2d 317. While the court is not controlled by such separation agreements of the parties, and may adopt or reject them as it seems proper, Russell v. Russell, supra; Williams v. Wil-

liams, 261 Ala. 328, 74 So.2d 582, the court, no doubt, deeming this voluntary agreement to be fair, reasonable and just in its provisions for the support, care and maintenance of the divorced wife and minor son, and free from fraud, duress or other coercion, adopted its terms as a feature of its final decree of divorce.

The final decree of divorce with the separation agreement merged into it dictates the outcome of this litigation. Under it Regenal R. Watson was to and did convey to Elizabeth G. Watson his joint tenancy estate in the real property with his right of survivorship to the whole, and Elizabeth G. Watson was to and did subject her fee simple title to a determinable fee in the event she should remarry. The deed to the wife, executed pursuant to the separation agreement incorporates and makes that decree of divorce a part of it, as though fully set out therein, and the decree of divorce makes the settlement agreement a part of it as if fully set out therein.

We think that "remarry" utilized in these instruments, is the key word to a decision of the case and was the event which would vest title to the property in the complainant. An analogous situation, to a limited extent, prevailed in the case of Coffey v. Cross, 185 Ala. 86, 93, 64 So. 95. There, without the aid of a separation agreement, as here, the chancellor decreed a fee simple title in the wife, and declared that in the event she married or died, her son would have a life estate. There the court said:

"It was, of course, competent for the chancellor, in rendering his decree for permanent alimony, to vest the fee-simple title to the land set apart as permanent alimony in the said Mary Cross. As this is true, it was no concern of the said Clark Cross that the chancellor saw proper, in said decree, to declare that, in the event the said Mary Cross should marry or die before the death of her said son, then the son should have a life estate in the said land, and that at his death the lands should revert or go back to the said Mary Cross. We think, after a careful consideration of this case, that the chancellor, by the above-quoted decree, intended to vest in Mary Cross the fee-simple title to the land, but that he also intended that, if she died or married before the death of her said son, then the son should have a life estate in said lands. It was the evident idea of the chancellor that the complainant might again marry, and it was his purpose to declare that, if she did so, then her said son should have the use of the lands as long as he lived. This provision would cut off the second husband or any children born to Mary Cross of a subsequent marriage from any use of the property while the said son of Clark Cross lived. It was also the evident purpose of the chancellor to so hedge the title decreed to the wife as that, during the life of the son, should she marry or die before he died, she could not, without the consent of the son, sell it, devise it by will, or otherwise dispose of it, so as to defeat his right to use and occupy it so long as he lived. * * *"

Possibly the equity court contemplated the wife's remarriage in this case and sensed its duty to protect its minor ward. This may have prompted the court to specifically decree that in the event of the wife's remarriage, the title to the homestead would revert to her son. Again, anticipating children by the second marriage, the court deemed it fair and expedient, to award the property, the home, to the minor son of the divorced parents, they having jointly submitted this proposal to the court. But speculating on that court's reasoning for decreeing as it did, is not all important. The fact remains that it was competent for the court to decree that which it did in plain, clear and explicit language. As we have said, we have only to look to the decree in the divorce case as merged with the separation agreement for a solution of this aspect of the present case. This we do and hold that upon the marriage of the respondents, Elizabeth G. Watson and Harold L. Wise, the title to

the subject real property, eo instante, was divested from the respondent Wise and became vested in the complainant, Elbert Ray Watson, subject to the existing mortgage lien thereon, held by Liberty National Life Insurance Company.

While we question the propriety of the use of "revert," meaning "to return to" or "to go back to," Black's Law Dictionary, Revised 4th Edition, in the separation agreement, we, nonetheless, think its use makes sufficiently clear the intention of the parties that the fee simple title to the property would immediately vest in the complainant should his mother remarry.

■■■■ Mrs. Wise contends that since she had not yet married, when she deeded to Wise, she at that time was privileged to convey a fee simple title to him. We do not think so. This construction is not in accordance with the plain and unambiguous language of the decree which incorporates the separation agreement as a part thereof. Judgments and decrees are to be construed like other written instruments. Schwab v. Schwab, 255 Ala. 218, 50 So.2d 435; Johnson v. Harrison, 272 Ala. 210, 130 So.2d 35. The legal effect must be declared in the light of the literal meaning of the language used. 49 C.J.S. Judgments § 436, p. 862 et seq. In the divorce suit there is no obscurity as to what the final decree determined. The condition upon which the fee is to be vested in the son is stated to be when the mother remarries. No exception is made in event this takes place after the conveyance. The mother could convey to Wise no greater estate in the property than she possessed. In Vaughn v. Brue, 245 Ala. 107, 111, 16 So.2d 17, 150 A.L.R. 668 this court said:

"' * * * When the owner of a determinable fee conveys in fee, the determinable quality of the estate follows the transfer. * * * Practically, the principle which prevails in this State, is, that all conveyances pass the estate of the grantor, and no more—whatever are its incidents operating to defeat, or what-

ever contingencies may terminate it, attend it in the hands of the grantee. * * * the general principle is, that derivative titles, can not rise above and superior to their original. They do not improve by mere transfer, whether the transfer is the act of the law, or the act of the parties.' "

Therefore the determinable fee which Mrs. Watson conveyed to the respondent, Wise, terminated when they married and became vested in the complainant.

Nor did the court err in overruling respondents' demurrer to the bill of complaint. We have already considered in this opinion each of the contentions argued in support of the demurrer and we conclude that they are not well taken.

■■■ The single ground cross-assigned as error by the appellee is that the trial court erred in imposing a lien in favor of the respondent, Harold L. Wise, against the property in the sum of $3,094.24. The trial court charged the minor complainant with the cost of repairs and additions to the residence located on the subject real property, which was paid by the respondent, Wise, and it imposed a lien in his favor against the real property to secure the payment of this sum. We are unable to agree with this aspect of the trial court's final decree for the reason so aptly stated in Richardson v. Little, 209 Ala. 351, 96 So. 144:

" * * * Since a binding contract, express or implied, to pay for improvements made on real property, or an effectual subsequent ratification of such a contract, is essential to the creation or to the existence of a mechanic's or materialman's lien (Code, § 4754 et seq.), it is well decided that a minor cannot so contract as to afford the necessary basis for the perfection or imposition of such statutory lien upon the minor's real estate. Phillips on Mechanics' Liens, §§ 108, 109; Rockel on Mec. Liens, §§ 29; McCarty v. Carter, 49 Ill. 53, 95 Am.

**28**

Dec. 572; Hall v. Acken, 47 N.J.Law, 340; 27 Cyc. p. 65. * * *"

See also Richardson v. Walden, 209 Ala. 267, 96 So. 145, and especially Phillips on Mechanics' Liens, § 108.

 The court also charged the minor with the mortgage payments made by Wise totalling $2,094.24. This was the sole obligation of the respondent Mrs. Wise, not of the minor complainant, if she was to occupy the house after her marriage to Wise. We think though that an inference may be drawn that Wise continued the payments after marriage on behalf of his wife. Otherwise she would lose her right to occupy the house, and did lose it if we follow the respondents' argument. Treating the house payments as having been kept up by Mrs. Wise we hold she had a right to occupy the property as she has done. Therefore, the respondent Wise should not have been charged with $3000 representing the reasonable rental of the premises at the rate of $150 a month. Consequently no amounts of money are owing between the respective parties to this suit.

The decree of the circuit court is affirmed insofar as it sets aside the deed to Harold L. Wise and vests title in the minor, Elbert Ray Watson.

The decree of the circuit court insofar as it fixes a lien on said real property in favor of Wise and charges him with rent for use and occupation of said real property is hereby reversed and annulled.

A decree will be rendered here dismissing the cross bill of complaint. All costs are hereby taxed against the cross complainants.

Affirmed in part, reversed and rendered in part

LIVINGSTON, C. J., and SIMPSON, COLEMAN, and BLOODWORTH, JJ., concur.