Wilda Boyd appeals from a judgment of the Tuscaloosa Circuit Court dismissing her appeal from an order of the Tuscaloosa Probate Court. We affirm.
 I. Background
This dispute began on May 1, 2000, when Wilda Boyd ("Boyd") petitioned the Tuscaloosa Probate Court for "letters of guardianship and conservatorship" of the person and estate of her husband, W.B. Oliver Boyd, who was incapacitated (case no. 00-449). The petition alleged that the estate "consist[ed] primarily of a bank account in the amount of $6,200 and a contingent undivided one-half interest in real property." The same day, Boyd posted an "administrator's bond" in the amount of $6,000.
On May 15, 2000, the probate court issued the letters, having found that W.B. Boyd was "incapacitated . . . and unable to manage his property and business affairs, and . . . unable to make rational and informed decisions . . . in his best interest." The court ordered Boyd to file a complete inventory of the conservatorship assets within 60 days. Six days later, however, on May 21, 2000, W.B. Boyd died, and Boyd filed a "motion to dismiss" the case, averring that his death had occurred "[b]efore the conservator and guardian could assume her duties." On June 5, 2000, the probate court granted Boyd's motion, purporting to dismiss case no. 00-449.
On September 22, 2000, Boyd petitioned the probate court for "letters of administration" in the estate of W.B. Boyd (case no. 00-1014). On October 4, 2000, the probate court granted Boyd's petition and issued letters of administration. *Page 1168 
On February 27, 2002, Mary Lou Boyd Franklin and Glenda Boyd Bowen, daughters of W.B. Boyd (hereinafter collectively referred to as "the heirs"), petitioned the probate court for removal of the administratrix ("the removal petition"). They averred that Boyd had, among other things, "failed to fulfill her [fiduciary] duties and responsibilities . . . [to file] a full and complete inventory" of the estate assets and had refused to "respond to . . . requests of the family members [for information.]" In particular, the heirs alleged:
 "Prior to December 1999 and Wilda K. Boyd's subsequent petition for the establishment of a conservatorship for W.B. Boyd in May 2000, on best belief and information certain funds were withdrawn from [a joint Alabama Central Credit Union] checking and/or savings account(s) of [the Boyds] [`the credit union account'] without [Mr. Boyd's] knowledge and consent. On best belief and information, said withdrawals consisted of quite substantial amounts, believed to total in excess of $80,000.00. Said withdrawals on current belief and information were made by the now current Administrator, Wilda K. Boyd. A full and complete accounting of these withdrawals has been requested by [the heirs] on numerous occasions, but, once again, to date, said requests for such information have been ignored by the Administrator.
". . . .
 "Despite repeated requests, the Administrator has refused and continues to refuse, to conduct a proper investigation into the matter of the `missing' money and to seek a recovery of same in the name of the Estate as appropriate; and, upon the establishment that said withdrawals were in fact made without the knowledge and consent of W.B. Boyd, to determine and declare said amounts so withdrawn to be `entrusted' assets of Mr. Boyd's during his lifetime that rightfully now belong to his Estate following his death. Said `entrusted' assets, if established as such, are clearly the continuing property of the Estate, as Mr. Boyd expressed no intent to make a gift of said amounts during his lifetime."
(Emphasis added.) The heirs submitted with the removal petition a "corrected (family) inventory of estate of [W.B. Boyd]," which cataloged a number of assets in addition to the disputed funds from the credit union account. They sought an order discharging Boyd "from her responsibilities as Administrator, effective immediately upon her aforesaid filing of [an] accounting and surrender of all estate funds unto the court." The probate court held a hearing on the motion on April 16, 2002.
On May 27, 2004, the heirs filed a document styled "Letter Petition for Determination of Ownership of Disputed Funds Estate of W.B. Oliver Boyd, Deceased — Probate Case No. 2000-1014" ("the ownership petition"). The subject of the ownership petition was the credit union account. The ownership petition states, in pertinent part:
 "An analysis of the [credit union account] statements for the period January 1993 through May 2000, which . . . were first reviewed by Your Honor, . . . reflects transfers and withdrawals in the amount of $90,998.65 in excess of those amounts substantiated as having been deposited into the [credit union account] on behalf or to the credit of Mrs. Boyd. . . .
". . . .
 "As now documented by the Account Statements themselves, which Mrs. Boyd to date has not refuted, substantial sums were removed by Mrs. Boyd from Mr. Boyd's Account at various times prior *Page 1169 
to May 2000 (the March 2000 withdrawal of $10,000 as one case in point previously noted by the court), and most of which now having been documented by the court's own review as occurring prior to December 1, 1999. These withdrawals were made without Mr. Boyd's knowledge and consent . . . and under the laws of this State, Mr. Boyd up until the date of his death, if he had remained competent, had the legal right to recover any such funds withdrawn without his consent and knowledge. . . .
 "First as his conservator, and later as the administratrix of his estate, Mrs. Boyd became responsible as his fiduciary to not only account for and report such amounts to the court and the estate beneficiaries, but to return these excess withdrawals to the estate, whether or not demand for that return was made by the beneficiaries, which of course has been made of her. . . . Mrs. Boyd continues to serve as the estate fiduciary, as does her responsibility in this regard."
(Emphasis in original.) The ownership petition sought an order (1) "[f]inding all excess withdrawals from the [credit union account], documented as of to date totaling . . . $90,998.65, [to be] assets of the estate" (emphasis added); (2) directing Boyd to return that amount to the estate; (3) requiring Boyd to make a "full accounting" of "all estate assets within her possession or of which she has knowledge"; (4) "[i]mposing all appropriate orders including but not limited to, a `freeze' of all . . . accounts" in Boyd's name, "pending a final resolution and closing of the estate"; and (5) retaining jurisdiction "over said estate funds and all parties . . . as may be necessary . . . to an enforcement of its Order," and "for the . . . possible taxing of costs and attorney fees."
On October 4, 2004, the probate court entered an order it styled as a "Decree of Determination of Ownership Interests in Certain Assets and Reservation of Jurisdiction to Set Attorney Fees and Expenses Incurred on Behalf of Estate" ("the order"). The order stated, in toto:
 "This day came the Petitioners, Mary Lou Boyd Franklin and Glenda Boyd Bowen, as beneficiaries and interested persons in the estate of W.B. Oliver Boyd, deceased, and filed their petition for determination of ownership interests in certain assets and claim for attorney fees and costs incurred by them on behalf of said decedent's estate.
 "And, it appearing that the record in this matter sets forth all the necessary facts for the court's consideration and determination of the question of ownership of certain `missing' funds withdrawn from that certain Alabama Central Credit Union Account formerly in the name of the decedent and bearing his Social Security Number; that the court having expended substantial judicial resources in its own review of the Account Statements in question; that upon submission of the evidence and legal arguments with respect thereto, and consideration of same, it appears mete and proper that said petition is due to be granted in all respects.
 "It is therefore ORDERED, ADJUDGED, and DECREED by this court that aforesaid petition for determination of that certain sum of $90,998.65 previously withdrawn from the decedent's credit union account prior to his death in May 2000, is and continues to be an asset of the aforesaid estate, and the same is hereby and in all respects passed and allowed, and all relief prayed for therein is hereby granted.
 "It is FURTHER ORDERED, ADJUDGED and DECREED that [Wilda K. Boyd] is directed and shall forthwith remit over into the custody of the court *Page 1170 
said amount of $90,998.65, as those interests in said estate asset due the beneficiaries of the estate, one of whom is herself, together with pre-judgment interest thereon at the rate of six percent (6%) compounded annually, said interest accrual to begin as of the 1st day of May 2000, as the date of her former petition for the establishment of a conservatorship for her then incapacitated, and now late husband, W.B. Oliver Boyd.
 "It is also ORDERED, ADJUDGED and DECREED that counsel for the [heirs] is further directed to provide any additional information that might be helpful to the court as to the issue regarding a fair and equitable allocation of attorney fees and costs in this matter, including, but not necessarily limited to, any attempts that were made to settle this matter, as well as information as to any improper purpose for which [Boyd's] positions were sought to be advanced. Similarly, counsel for Mrs. Boyd is also directed to provide by way of affidavit or other testimony information bearing upon the issue of attorney fees and costs forced upon the [heirs] in this matter, including the necessity of the court itself to become involved before the subject account information was finally made available to the estate beneficiaries.
 "It is FURTHER ORDERED and DECREED that the court hereby retains jurisdiction of this matter as may be necessary, required or helpful in its enforcement of this [order], including, but not limited to, any subsequent hearing on the issue of the amount of attorney's fees and costs and the taxing of same against [Boyd] or from the estate itself."
(Emphasis added.)
On October 11, 2004, Boyd appealed to the Tuscaloosa Circuit Court. The circuit court dismissed Boyd's appeal on the ground that it failed to invoke the appellate jurisdiction of that court. The judgment of dismissal stated:
 "This case came to be heard on [the heirs'] motion to dismiss the appeal from probate on the grounds that the order appealed from was not an order appealable to the circuit court under [Ala. Code 1975, § 12-22-21]. The order appealed from is . . . styled `Decree of Determination of Ownership Interests in Certain Assets and Reservation of Jurisdiction to Set Attorney Fees and Expenses Incurred on Behalf of Estate.'
 "After a careful review of the order, it is the opinion of this court that the probate judge did not rule on the motion to remove the estate administrator. Further, the order did not constitute a final settlement of the estate or conservatorship. Therefore, the posture of the estate or conservatorship is not such that an appeal would be to the circuit court. The appellee's motion to dismiss the appeal is granted. . . ."
(Emphasis added.)
From the circuit court's judgment of dismissal, Boyd appealed to this Court. She contends that the circuit court misconstruedthe order of the probate court and, consequently, erroneously dismissed her appeal. Framing three issues for review, Boyd argues that the circuit court erred in holding that it lacked subject-matter jurisdiction, because, she says, the probate court's order (1) "was respecting a matter of the final settlement of the conservatorship"; (2) "was respecting a matter of the final settlement of the [decedent's] estate"; and/or (3) "was a removal of [her] as administratrix." Boyd's brief, at 2. For ease of discussion, we will address these contentions in reverse order.
 II. Discussion
Boyd concedes — as she must — that her right to review of the probate court's order *Page 1171 
is controlled by Ala. Code 1975, §§ 12-22-20 to -21. Pursuant to §12-22-20, "[a]n appeal lies to the circuit court . . . from anyfinal decree of the probate court, or from any final judgment,order or decree of the probate judge." (Emphasis added.) Section12-22-21 provides, in pertinent part:
 "Appeal from the order, judgment or decree of the probate court may be taken by the party aggrieved to the circuit court . . . in the cases hereinafter specified. . . . Appeal to the circuit court in such cases shall be within the time hereinafter specified:
". . . .
 "(3) Upon any decree, judgment or order removing an . . . administrator, in which case the appeal must be taken within seven days after such decree, judgment or order;
". . . .
 "(5) After a final settlement, upon any order, judgment or decree, made on such settlement, or respecting any item or matter thereof, or any previous settlement or item, or matter thereof, within 42 days thereafter. . . ."
(Emphasis added.)
Boyd contends that subsections (3) and (5) of § 12-22-21
authorized an appeal to the circuit court of the probate court's order. Thus, the overriding issue is whether the circuit court's conclusion that the order neither removed Boyd as administratrix of W.B. Boyd's estate nor constituted "a final settlement of the estate or conservatorship" was a misconstruction of the order.
Courts interpret judgments by the same rules of construction as "other written instruments." Wise v. Watson, 286 Ala. 22, 27,236 So.2d 681, 686 (1970). "If there is uncertainty and ambiguity in a . . . judgment, the [reviewing] court must construe it so as to express the intent of the . . . trial judge." Price v.Price, 360 So.2d 340, 343 (Ala.Civ.App. 1978). See alsoInter-Connect, Inc. v. Gross, 644 So.2d 867, 868 (Ala. 1994) ("`Rules applicable to the construction and interpretation of contracts are applicable to the construction and interpretation of judgments.'") (quoting Hanson v. Hearn, 521 So.2d 953, 954
(Ala. 1988)). "Because the construction of a judgment is a matter of law," review is de novo. Sheehan v. Balasic,46 Conn. App. 327, 333 n. 4, 699 A.2d 1036, 1039 n. 4 (1997).
 A. Removal
It is undisputed that the probate court never expressly ruled on the heirs' removal petition. Nevertheless, Boyd argues that the ownership petition, which sought an order "[i]mposing all appropriate orders including but not limited to, a `freeze' of all . . . accounts" in Boyd's name, was merely a "renewal" of the removal petition, Boyd's brief, at 20, and, because the probate court's order granted the ownership petition "in all respects," it "can certainly be viewed as a removal of an administratrix." Boyd's brief, at 20. We disagree with this construction of the order.
The order of the probate court does not mention the removal petition or the relief it sought. As indicated by its style, namely, "Decree of Determination of Ownership Interests inCertain Assets and Reservation of Jurisdiction to Set Attorney Fees and Expenses Incurred on Behalf of Estate" (emphasis added), the subject of the order was the "missing funds" from the credit union account, which was the only theme the ownership petition shared with the removal petition. In that connection, the order expressly limited its scope to the relief requested in theownership petition. *Page 1172 
Specifically, the court stated: "[A]ll relief prayed for [in`that aforesaid petition for determination of that certain sum of$90,998.65'] is hereby granted." (Emphasis added.) The order contemplated Boyd's compliance with it, not her removal as administratrix. Thus, the circuit court correctly concluded that Boyd's appeal was not an appeal from "any decree, judgment or order removing an . . . administrator." § 12-22-21(3).
 B. Final Settlement of Decedent's Estate
Boyd also contends that § 12-22-21(5) authorizes this appeal as one "respecting a matter of the final settlement of the [decedent's] estate." Boyd's brief, at 2 (emphasis added). More specifically, she argues: "The disgorgement was ordered by the decree for purposes of a final settlement of the estate. [The heirs] have continually requested the disgorgement so that a final settlement could be [e]ffected. Certainly, this must be construed as respecting a matter of the final settlement of theestate." Boyd's brief, at 19 (emphasis added).
This argument is based on a misreading of § 12-22-21(5). Section 12-22-21(5) does not authorize an appeal from any judgment or order "respecting a matter of a final settlement," as Boyd reads it. Not every order of a probate court involving the funds in a decedent's estate is appealable as from a final settlement. On the contrary, a partial settlement is appealable, pursuant to Ala. Code 1975, § 12-22-4, but such an appeal must be brought in this Court. Instead, § 12-22-21(5) authorizes an appeal to the circuit court only "[a]fter a final settlement." (Emphasis added.) Thus, the triggering event is the final settlement itself, not, as Boyd argues, some order anticipating, or facilitating, an eventual final settlement.
Moreover, in the context of a decedent's estate, "`[f]inalsettlement' has a distinct meaning." Ex parte Clayton,514 So.2d 1013, 1016 (Ala. 1987) (emphasis added). In Clayton, this Court explained:
 "Section 43-2-502, Code of Alabama (1975), states what actions constitute a final settlement:
 "`In making settlements of an administration, the executor or administrator must proceed as follows:
 "`He must make out an account between himself and the estate he represents, . . . which account, verified by his oath, must be filed with the judge of probate of the court having jurisdiction.
 "`With such account he must also file the vouchers and written evidence in his possession, . . . file a statement, on oath, of the names of the heirs and legatees of such estate. . . .
 "`He must state the sum of funds of the estate which he has used for his own benefit. . . .'
 "Furthermore, this Court has previously held that `[j]urisdiction for final settlement in the probate court begins upon filing accounts and vouchers with statement of the heirs invoking the court's jurisdiction for such settlement and an order entered setting day, directing notice, etc.' [Ex parte McLendon, 212 Ala. 403, 405, 102 So. 696, 698
(1924)], citing §§ 5901, 5904, Code of Alabama (1923), now §§ 43-2-501 and 43-2-502, Code of Alabama (1975)."
Ex parte Clayton, 514 So.2d at 1016-17. See also McCormick v.Langford, 516 So.2d 643, 646 (Ala. 1987) (the probate court could not enter a "final settlement order" before the personal representative filed documents required by § 43-2-502 "supporting his statement of account"). Boyd does not allege, and the record does not disclose, that any of these procedures for invoking the probate court's jurisdiction *Page 1173 
for a final settlement has been followed in this case. Indeed, she acknowledges that the disgorgement was ordered as acondition precedent to a final settlement. Boyd's brief, at 19.
"[A] settlement, which does not close the business of the estate in the hands of the administrator, is not a final settlement of the estate." Stevens v. Tucker, 87 Ind. 109, 115
(1882). The term "final settlement" signifies that "nothing remain[s] to be done by an administrator or by the court in the settlement of [the] estate." Id. That situation was not obtained by the order in this case. The order makes no distributions. Indeed, the order involves only one asset — the credit union funds. It does not purport to settle all liabilities or to discharge the administratrix. See Ala. Code 1975, §§43-2-627 to -628. In short, the circuit court correctly construed the order as not "constitut[ing] a final settlement of the estate."
 C. Final Settlement of Conservatorship
Boyd's argument that the order "was respecting a matter of the final settlement of the conservatorship" (emphasis added) suffers many of the same infirmities as her argument regarding settlement of the estate. The right of appeal to the circuit court in such a case arises only "[a]fter a final settlement," § 12-22-21(5), of the conservatorship, not from some actprecedent to a final settlement.
The Alabama Uniform Guardianship and Protective Proceedings Act, Ala. Code 1975, §§ 26-2A-1 to -160, as supplemented by Ala. Code 1975, §§ 26-5-1 to -54, "recognizes two fiduciary capacities — i.e., a `guardian' who is `of the person' and analogous to the role of the parent, and a `conservator' who is `of the property' and more closely analogous to the role of a trustee." Comment to § 26-2A-1. Although under this statutory scheme a guardianship terminates automatically on the death of the ward, § 26-2A-109, the ward's death does not terminate the "guardian's liability for prior acts or the obligation to account for funds and assets of the ward." Id. "The fiduciary relationship does not cease until there is an order discharging the guardian, which has been granted in accordance with the procedure prescribed by statute. The death of the ward . . . does not of itself operate as a discharge." 39 C.J.S. Guardian Ward § 42 (2003) (footnotes omitted). The order in this case does not purport to discharge Boyd from liability as conservator.
On the death of the ward, "a final settlement of the conservatorship must be made." § 26-5-7 (emphasis added). In this context, a "final settlement" involves "a final ascertainment of the guardian's liability, the rendition of a final decree, conclusive on him and his sureties, and on which execution could issue against them." Lee v. Lee, 55 Ala. 590,603 (1876). "[T]he object of settling the account of the guardian [is] to ascertain what estate and effects of the ward remain in his hands and should be paid over or delivered to the administratrix of the ward." Kimball v. Perkins, 130 Mass. 141,142 (1880). "A guardianship estate can't be closed out to thin air" — the probate court must be apprised of the disposition of the conservatorship assets. Scott K. Summers, Guardianship Conservatorship: A Handbook for Lawyers 191-92 (American Bar Association 1996).
Boyd concedes that there has been no compliance with §§26-5-7 to -9, some of the provisions governing final settlements of guardianship estates. Indeed, she states: "No accounting or final settlement of the conservatorship was held so as to be compliant with Ala. Code § 26-5-7 to -9 (1975)." Boyd's brief, at 15. Thus, *Page 1174 
the status or disposition of the assets of the conservatorship has never been documented. For the same reasons, the June 5, 2000, order purporting to dismiss case no. 00-449 could not constitute a final settlement in the context of § 12-22-21(5).
In that connection, the heirs argue that the June 5, 2000, order of the probate court in case no. 00-449 dismissed the conservatorship and that "Boyd cannot now be heard [to insist] that such dismissal of the conservatorship can . . . somehow provide the basis for her appeal to this Court or any other court for that matter," because, they contend, "[t]he time limit for any such appeal therefrom long ago passed." The heirs' brief, at 16. To that argument, Boyd responds that the dismissal did not
end the conservatorship, but, if it did, then the order entered in case no. 00-1014 was essentially a collateral attack on the judgment of dismissal and would be appealable as such. Reply brief, at 10.
We agree with Boyd's first response to the heirs' argument, that is, that the dismissal did not end the conservatorship. Letters of conservatorship were granted upon Boyd's petition. Boyd's petition alleged that the estate consisted of approximately $6,000, and she posted a bond in that amount. The estate thus opened could not be "closed out to thin air." Whatever legal effect might be ascribed to the order purporting to dismiss case no. 00-449, that order could not constitute a final settlement. Consequently, the order in case no. 00-1014 was not a collateral attack. The circuit court correctly construed that order as not "constitut[ing] a final settlement of the . . . conservatorship."
 III. Summary
In summary, we conclude that the probate court's order in case no. 00-1014 neither (1) removed Boyd as administratrix of the estate of W.B. Oliver Boyd, (2) finally settled the conservatorship, nor (3) finally settled the decedent's estate. Consequently, § 12-22-21 provided no right of appeal from the order to the circuit court. Because the circuit court did not err in dismissing Boyd's appeal, its judgment is affirmed.
AFFIRMED.
NABERS, C.J., and LYONS, SMITH, and PARKER, JJ., concur.