BRYAN, Judge.
 

 Amy M. Wilkinson (“the mother”) appeals from an order of the Marshall Circuit Court that terminated the child-support obligation of Michael A. Wilkinson (“the father”) and declined to order the father to pay a portion of the postminority
 
 *1273
 
 educational expenses of the parties’ children.
 

 The record on appeal reveals the following. The mother and the father were divorced in February 1988. The parties had two children; the older child was born in November 1984, and the younger child was born in July 1988. Pursuant to a settlement agreement incorporated into the parties’ divorce judgment, the mother was awarded custody of the children and the father was ordered to pay child support. In July 1990, the trial court entered a judgment modifying the parties’ divorce judgment based on a written agreement of the parties (this judgment will hereinafter be referred to as “the 1990 order”). The 1990 order set the father’s child-support obligation at $850 a month and stated that the father’s child-support obligation was to continue each month until the younger child “attainted] the age of majority or until both children ha[d] completed four (4) years of college, whichever [wa]s longer, or until such amount [wa]s modified by an agreement of the parties or by the order of a court of competent jurisdiction.”
 

 On October 18, 1995, the trial court entered a judgment modifying the 1990 order based on a written agreement of the parties (this judgment will hereinafter be referred to as “the 1995 order”). Regarding child support, the 1995 order stated that the “provisions regarding child support in the prior judgments are hereby modified to the extent inconsistent with the following: ... the [father] shall pay to the [mother] the sum of $474.22 for the current support and maintenance of the minor children of the parties until a further order of the court, or until a further written agreement of the parties.”
 

 The 1995 order also included a provision addressing postminority educational support, which stated as follows:
 

 “7.
 
 PosP-Secondary Education.
 
 The [mother] and the [father] shall equally contribute to the costs of the post-secondary education of the children of the parties incurred from the date of the Agreement until each child reaches the age of twenty-five (25) years. Such costs shall include, but not be limited to, the costs of tuition, room, board, laboratory fees, books and supplies, incurred by or for the benefit of such child.”
 

 On November 29, 2007, the father filed a petition to modify the 1995 order, alleging that his child-support obligation was due to be terminated because a material change in circumstances had occurred — namely, the children had become emancipated. On January 7, 2008, the mother filed an answer to the father’s petition to modify and a counterclaim alleging, among other things, that the father had failed to pay his share of the college-related expenses of the children.
 
 [1]
 

 The trial court conducted an ore tenus hearing on July 29, 2008, and the following pertinent evidence was received. The father testified that he did not maintain regular contact with the children and that neither the mother nor the children had communicated with the father about the college education of the children. The father stated that he first received notice about the mother’s desire for the father to contribute to the college expenses of the children when the mother filed her counterclaim to the father’s petition to modify. The father testified that he earned $46,000 a year working for the Pelham Police Department and that he had continued to pay child support for the children up to the date of the final hearing in this matter despite the fact that the children were, respectively, 23 and 20 years old at the time of the final hearing.
 

 
 *1274
 
 The mother testified that the older child had graduated from high school in 2004 and that he had attended Oklahoma City University (“OCU”) from the fall semester of 2004 through the spring semester of 2006. The older child transferred to the University of Central Oklahoma (“UCO”) in the fall semester of 2006, and he transferred to the University of Oklahoma (“UOK”) in the spring semester of 2007. The older child transferred to the University of Alabama at Birmingham (“UAB”) for the fall 2007 semester and continued at UAB through the spring semester of 2008.
 

 The mother testified that the college expenses of the older child were as follows:
 

 2004/2005 OCU $22,066.25
 

 2005 Miscellaneous Expenses $ 571.54
 

 2005/2006 OCU $23,268.46
 

 2006 Off-Campus Housing $ 2,869.95
 

 Fall 2006 UCO $ 3,874.41
 
 [2]
 

 Spring 2007 UOK $ 9,257.50
 

 Fall 2007 UAB $10,245.00
 

 Spring 2007 UAB $ 6,556.00
 

 The mother stated that the older child’s college expenses had been paid primarily through student loans. The mother testified that she had undertaken “Parent-Plus” loans in order to pay for the older child’s tuition expenses at OCU. The mother also introduced evidence indicating that an unsubsidized loan and a private loan were used to pay the expenses of the older child at OCU. The mother testified that the older child had signed some of the student loans undertaken for his education at OCU, but she did not specify which loans the older child was not obligated to repay. The mother testified that she had made interest payments on “some” of the loans, but she did not state how much interest she had paid.
 

 An “Account Summary” from UCO stated that the “term charges” for the fall 2006 semester were $8,854.41 and that $1,795.08 had been paid by a prepaid college tuition (“PACT”) plan, that $836.83 had been paid by credit card, and that $1,732.50 had been paid by an unsubsidized loan.
 
 See
 
 supra note 2. The mother stated that she and the older child had signed a student loan to help pay those expenses. The mother introduced a “Statement of Account” from UOK that totaled $8,825.50, but that statement contained a handwritten notation of $9,257.50. The mother stated that she paid the older child’s expenses at UOK through loans that both she and the older child had signed. The mother also stated that the older child’s tuition, books, and housing at UAB had been paid primarily through loans that she and the older child had signed. A notation on an exhibit entered into evidence by the mother stated that the older child owed $40,008.31 in outstanding student loans.
 

 The mother also testified that she had purchased a PACT plan for the children and that that plan had provided some tuition assistance at each school that the older child had attended. However, with the exception of the fall 2006 semester at UCO, it was unclear how much tuition assistance the PACT plan had provided at each school that the older child had attended. Furthermore, the mother admitted copies of a credit-card statement from August 2005 showing that she had charged $571.54 to her credit card for payment of the older child’s housing and school books.
 

 However, the mother admitted that the older child’s college expenses from OCU had been defrayed by a scholarship award and that she had paid no part of the expenses stated as $22,066.25 or $23,268.46 from OCU. Furthermore, the evidence introduced by the mother indicating that she
 
 *1275
 
 had paid $2,869.95 in 2006 for off-campus housing for the older child consisted of an e-mail from an unidentified woman "with “The Aberdeen,” which stated that the older child’s monthly rent payment was $475. The copy of the e-mail in the record contains a handwritten notation indicating that the older child lived in that apartment complex for six months.
 
 [3]
 
 However, the email also indicated that the mother was arranging for a one-time payment of the older child’s rent, and the mother testified that she did not have a receipt indicating that she paid $2,869.95 for rent. The mother later testified that she only paid an unspecified “portion” of the $2,869.95 rent expense.
 

 The mother testified that the younger child had graduated from high school in 2007 and that he had begun attending Snead State Community College (“SSCC”) in the fall 2007 semester. The mother produced evidence indicating that the younger child’s college expenses totaled $3,197.62 for three semesters at SSCC. The mother testified that the PACT plan covered the younger child’s tuition expenses. However, the documentary evidence produced by the mother indicated that she had paid at least a portion of the younger child’s college expenses, such as expenses for books. It was unclear from the record how much the PACT plan had provided for the younger child’s college tuition and how much the mother had paid for tuition on behalf of the younger child.
 
 [4]
 
 The mother also testified that she had assisted the younger child with his living expenses; however, she did not produce any evidence indicating what amount she had contributed toward the living expenses of the younger child.
 
 [5]
 

 On August 4, 2008, the trial court entered a final order that, among other things, terminated the father’s child-support obligation and found that the evidence presented at the final hearing revealed that the mother had “contributed little to no funds toward [the] education expenses” of the children. The trial court therefore refused to order the father to contribute any amount toward the college expenses of the children. On August 29, 2008, the mother filed a motion pursuant to Rule 59, Ala. R. Civ. P., to alter, amend, or vacate the August 4, 2008, judgment. On September 25, 2008, the trial court entered an amended final judgment that was identical to the August 4, 2008, judgment except that it added a provision stating that the August 4, 2008, judgment was “not intended to release either party from the ‘equal contribution’ requirement of the 1995 [or
 
 *1276
 
 der] or otherwise modify previous orders.” The mother timely appealed.
 

 On appeal, the mother argues that the trial court erred in terminating the father’s child-support obligation. She further argues that the trial court erred in concluding that she had contributed little to no funds toward the college expenses of the children and, therefore, that the trial court erred when it refused to order the father to pay an equal share of the expenses she had “incurred” on behalf of the children.
 

 “‘“[W]hen a trial court hears ore tenus testimony, its findings on disputed facts are presumed correct and its judgment based on those findings will not be reversed unless the judgment is palpably erroneous or manifestly unjust.” ’ ”
 
 Water Works & Sanitary Sewer Bd. of Montgomery v. Parks,
 
 977 So.2d 440, 443 (Ala.2007) (quoting
 
 Fadalla v. Fadalla,
 
 929 So.2d 429, 433 (Ala.2005), quoting in turn
 
 Philpot v. State,
 
 843 So.2d 122, 125 (Ala.2002)).
 

 “Moreover, alimony, child support, and their subsequent modifications are matters resting within the sound discretion of the trial court, and its judgment will not be reversed absent a showing of abuse of that discretion.
 
 Brannon v. Brannon,
 
 477 So.2d 445 (Ala.Civ.App.1985).
 
 See also Lucero v. Lucero,
 
 485 So.2d 347 (Ala.Civ.App.1986). Additionally, we point out that an agreement between parents fixing child support becomes merged into the divorce decree and thereby loses its contractual nature, at least to the extent that a court of equity has the power to modify the decree when changed conditions so justify.
 
 Ezell v. Ezell,
 
 486 So.2d 446 (Ala.Civ.App.1986).
 
 See also Tucker v. Tucker,
 
 403 So.2d 262 (Ala.Civ.App.1981). Finally, judgments and decrees are to be construed like other written instruments, and the legal effect must be declared in light of the literal meaning of the language used.
 
 Wise v. Watson,
 
 286 Ala. 22, 236 So.2d 681 (1970).”
 

 Thompson v. Alexander,
 
 579 So.2d 665, 666-67 (Ala.Civ.App.1991).
 

 The mother’s first contention on appeal is that the trial court erred in terminating the father’s child-support obligation. It was undisputed that the children were both over the age of 19 at the time of the final hearing. “ ‘[W]here there is no factual dispute between the parties, the reviewing court must determine whether the trial court correctly applied the relevant law to the facts and whether the judgment was an abuse of discretion and plainly and palpably wrong.’”
 
 R.G. v. G.G.,
 
 771 So.2d 490, 492 (Ala.Civ.App.2000) (quoting
 
 Franz v. Franz,
 
 723 So.2d 61, 63 (Ala.Civ.App.1997)).
 

 The father correctly argues in his brief on appeal that “the general rule in Alabama is that a trial court has no jurisdiction to require a parent to provide child support to a child who has reached the age of majority.”
 
 Taylor v. Taylor,
 
 991 So.2d 228, 236 (Ala.Civ.App.2008) (citing
 
 Penney v. Penney,
 
 785 So.2d 376, 378 (Ala.Civ.App.2000)).
 
 See also
 
 Ala.Code 1975, § 26-1-1 (designating the age of majority as 19 years). However, the mother argues that the terms of the 1990 order still applied insofar as the father was required to pay child support until the younger child “attainted] the age of majority or until both children ha[d] completed four (4) years of college, whichever is longer....” The mother argues that the parties intended for child support to last beyond the date that the children attained the age of majority and that the 1995 order only modified the amount of child support that the father was obligated to pay. Therefore, she argues, the father was required to prove a material change in circumstances beyond the emancipation of the
 
 *1277
 
 children in order to justify the trial court’s decision to modify the father’s child-support obligation.
 

 “While it is true that a parent has no legal obligation to support or educate a child who has attained the age of majority, the parent can so obligate himself by agreement.
 
 Holmes v. Holmes,
 
 410 So.2d 115 (Ala.Civ.App.1982). Such an agreement which has been incorporated into a divorce decree can be enforced and modified.
 
 Scott v. Scott,
 
 401 So.2d 92 (Ala.Civ.App.1981).”
 

 Cunningham v. Cunningham,
 
 500 So.2d 22, 24 (Ala.Civ.App.1986). It is well settled that “[a]n award of child support may be modified only upon proof of a material change of circumstances that is substantial and continuing.”
 
 Romano v. Romano,
 
 703 So.2d 374, 375 (Ala.Civ.App.1997).
 

 However, the mother’s argument fails to adequately consider the effect of the 1995 order insofar as it modified the child-support provision in the 1990 order. This court has held that, “ ‘[t] he words of [a settlement] agreement are to be given their ordinary meaning, and the intentions of the parties are to be derived from them.’”
 
 R.G. v. G.G.,
 
 771 So.2d at 494 (quoting
 
 Sartin v. Sartin,
 
 678 So.2d 1181, 1183 (Ala.Civ.App.1996)). The 1990 order clearly obligates the father to pay child support for the children beyond the age of majority, and the 1995 order prefaces the modification of child support contained within that order with the condition that the 1990 order was being modified only to the extent that the terms of the 1990 order were inconsistent with terms of the 1995 order. A plain reading of the 1995 order reveals that the 1995 order obligated the father only to pay a sum certain “for the current support and maintenance of
 
 minor children of the parties
 
 until a further order of the court, or until a further written agreement of the parties.” This language, given its plain, ordinary meaning, does not obligate the father to pay child support for the children after they reach the age of majority. Therefore, a plain reading of the 1990 order together with the 1995 order reveals an inconsistency as to the time limitation of the father’s child-support obligation. Because an inconsistency exists between the 1990 order and the 1995 order, by its own terms the 1995 order modified the 1990 order regarding the time limitation of the father’s child-support obligation.
 

 The mother argues that the fact that the father did not seek to terminate his child-support obligation until well after the children had attained the age of majority was evidence of the parties’ intent that the father would continue paying child support for the children after they attained the age of majority. However, in
 
 Ex parte Moore,
 
 805 So.2d 715, 719-20 (Ala.2001), our supreme court rejected a similar argument and concluded that the father’s delay in seeking modification of his child-support obligation did not operate as a waiver of his right to seek a modification. We conclude, therefore, that the trial court did not err in determining that the 1995 order modified the 1990 order so that the father was not obligated to pay child support for the children beyond the age of majority. Accordingly, the father was only required to prove that a material change in circumstances had occurred because the children had attained the age of majority. Because the ages of the children were not disputed, we affirm the trial court’s judgment insofar as it terminated the father’s child-support obligation.
 

 The mother next argues that the trial court erred in finding that she had “contributed little to no funds toward [the] education expenses” of the children and, based on that finding, that the trial court erred in failing to order the father to pay
 
 *1278
 
 an equal share of the college expenses she had “incurred” on behalf of the children. Because the trial court made its factual determination after receiving ore tenus evidence from the parties, the trial court’s “judgment based on facts found from that evidence will not be disturbed on appeal unless the judgment is not supported by the evidence and is plainly and palpably wrong.”
 
 Spencer v. Spencer,
 
 812 So.2d 1284, 1286 (Ala.Civ.App.2001) (citing
 
 Thrasher v. Wilburn,
 
 574 So.2d 889, 841 (Ala.Civ.App.1990)).
 

 The trial court’s amended final judgment regarding the postminority educational expenses of the children stated, in full:
 

 “It appears that paragraph seven of the Stipulation and Motion for Judgment filed September 21, 1995[ (and later incorporated into the 1995 order),] requires the parties to ‘equally contribute’ to the costs of post-secondary education expense. It appears from the evidence presented that the [mother] has actually contributed little to no funds toward education expenses [of the children]. Therefore, the Court declines to set an amount owing by [the father] to [the mother].
 
 The ruling in this paragraph is not intended to release either party from the ‘equal contribution’ requirement of the 1995 [order] or otherwise modify previous orders.”
 

 (Emphasis in original to distinguish the language added when the final judgment was amended.)
 

 At the final hearing, the mother produced evidence indicating that she had obligated herself to repay student loans on behalf of the older child, that she had purchased a PACT plan for the children, and that she had otherwise made out-of-pocket payments toward certain college expenses of the children, including payments toward expenses for books, tuition, and housing.
 

 Regarding the older child’s student loans, the mother testified that she and the older child had obligated themselves to repay his student loans, which, according to the mother, totaled $40,008.31. The mother argues that the trial court erred in failing to consider the amount of student-loan debt that she had incurred to be a contribution to the older child’s college expenses. In support of her argument, the mother relies on the last sentence of paragraph seven of the parties’ agreement that was incorporated into the 1995 order, which states: “Such costs shall include, but not be limited to, the costs of tuition, room, board, laboratory fees, books and supplies, incurred by or for the benefit of such child.” Based on that sentence, the mother argues that, because all the expenses charged to date for the college education of the children have been “incurred,” the father was required to contribute to those expenses. However, a reading of the entirety of paragraph seven indicates that the last sentence of that paragraph was unrelated to the issue before the trial court and this court, which is whether the mother contributed anything toward the payment of the college expenses of the children. The last sentence addresses only what costs are to be included in the calculation of the children’s college expenses, which, in this case, is any cost “incurred by or for the benefit of’ the children.
 
 [6]
 

 
 *1279
 
 In its final judgment, the trial court concluded, in essence, that the mother’s testimony that she had obligated herself to repay student loans on behalf of the older child was not sufficient to meet her burden of proving that she had made an actual contribution toward the college expenses of the older child. We agree. In this particular instance, we believe that the mother had the burden of proving that she had made payments toward the repayment of the older child’s student loans. However, we understand that the older child had not graduated from college as of the date of the final hearing and that, therefore, repayment of his student loans was not yet required. Therefore, we believe that the mother was at least required to prove that she was personally liable on a demand for payment from a student-loan holder. The mother did not meet this burden. The only evidence before the trial court regarding the older child’s student loans was that the mother had “signed” for student loans for the educational benefit of the child. The mother did not produce any evidence demonstrating that she had made any payments on those outstanding student loans, and she further failed to produce any evidence indicating that she was personally responsible for making future loan payments on the older child’s student loans. Without such evidence, there was no way for the trial court to know whether the mother was required to make any future payments toward repayment of the older child’s student loans.
 
 [7]
 
 Furthermore, there was no evidence in the record indicating what the terms of the student loans were, what date repayment of the student loans would begin, or what the monthly payments of the student loans would be.
 
 [8]
 
 Because the mother failed to produce any evidence demonstrating that she had contributed toward the repayment of the older child’s student loans, and because she failed to show that she was personally responsible for making future loan payments on the older child’s student loans, we conclude that the mother failed to meet her burden of proof. Accordingly, the trial court did not err in failing to order the father to pay an equal portion of the older child’s student loans.
 

 Regarding the mother’s purchase of a PACT plan for the benefit of the children, we believe that a plain reading of the 1995 order requires the conclusion that the mother’s purchase of a PACT plan constitutes a contribution toward the college expenses of the children because the PACT plan paid at least part of the college tuition of the children. However, the mother failed to submit any evidence regarding the amount she paid to purchase the PACT plan.
 
 [9]
 
 Therefore, we conclude that the trial court did not err in failing to
 
 *1280
 
 order the father to make an “equal contribution” to the mother’s purchase of a PACT plan.
 

 Finally, the mother submitted evidence indicating that she had paid a portion of the college expenses of the children with her credit card. We conclude that those payments should have been considered to be a contribution toward the college expenses of the children and that the father should have been required to contribute an amount equal to half of what the mother proved she had contributed. Therefore, we conclude that the trial court’s judgment, insofar as it found that mother had contributed “little to no funds toward education expenses” of the children, was unsupported by the evidence. Accordingly, we reverse that part of the trial court’s judgment, and we remand this cause for the trial court to weigh the evidence submitted by the mother and to determine, based on our holding today, the mother’s contribution toward the college expenses of the children.
 

 In conclusion, we affirm that part of the trial court’s judgment that terminated the father’s child-support obligation. We reverse the trial court’s judgment insofar as it found that the mother had contributed little to no funds toward the college expenses of the children, and we remand this cause with instructions.
 

 The father’s “Motion to Strike” is denied.
 

 AFFIRMED IN PART; REVERSED IN PART; AND REMANDED WITH INSTRUCTIONS.
 

 THOMPSON, P.J., and PITTMAN, THOMAS, and MOORE, JJ., concur.
 

 [1]
 

 . The mother sought other relief in her counterclaim, none of which is at issue on appeal.
 

 [2]
 

 . The mother introduced an "Account Summary” from UCO that stated that the "term charges” for the fall of 2006 were $3,854.41 and that the "term credits and payments” were $3,864.41.
 

 [3]
 

 . The off-campus housing expense was calculated as follows: $475 (per month) X 6 months = $2,850 + $19.95 (convenience fee) = $2,869.95.
 

 [4]
 

 . The mother included $1,222 in tuition for spring semester 2008 at SSCC in her calculation of the younger child's college expenses. An account summary for the younger child's spring 2008 semester stated that the "term charges” were $1,247, that $1,222 was credited as "Financial Aid/Credit Coverage,” and that only $25 remained due on the account. The mother produced a receipt for a $25 payment to SSCC, but there was no receipt in evidence indicating that she had paid $1,222 of the younger child's tuition expense.
 

 [5]
 

 .In the "Statement of Facts” section of her brief on appeal, the mother states that she had "paid over $81,000 toward the post-secondary expenses of the children, while the [father] has paid nothing.” In response, the father filed a motion to strike that statement from the mother’s brief directing this court’s attention to the mother’s testimony that she had paid no part of certain college expenses incurred by the children. Although we deny the father’s motion to strike, we note that this court has thoroughly considered all the evidence before the trial court.
 

 [6]
 

 . The mother also states in her brief to this court that the trial court erred in construing the 1995 order to mean that expenses must first be paid by the mother before the father is responsible for any portion of those expenses. However, the language in trial court's judgment does not support the mother’s interpretation of the judgment. We do not read the trial court's judgment to mean that the mother must first pay all the college expenses of
 
 *1279
 
 the children before she can seek reimbursement from the father. The trial court simply found that the mother did not prove that she had made any contributions toward the college expenses of the children.
 

 [7]
 

 .This leaves open the possibility that the older child could pay his student loans and that the mother may never contribute any funds toward the repayment of the older child's student loans.
 

 [8]
 

 . The mother did testify that the loans would have to be repaid after the older child graduated from college. However, there was no indication of when that would be.
 

 [9]
 

 . Because the nature of a PACT plan is such that its value at the time that it pays a portion of college tuition is usually higher than its value at the time of purchase, the mother was required to prove the purchase price of the
 
 *1280
 
 PACT plan in order to be awarded an "equal contribution" of what she paid.