BRYAN, Justice.
Southeast Construction, L.L.C. (“SEC”), appeals from an order of the Tuscaloosa Circuit Court enforcing, pursuant to this Court’s mandate in Southeast Construction, L.L.C. v. WAR Construction, Inc., 110 So.3d 371 (Ala.2012) (“SEC I”), a previous judgment entered by that court based on an arbitration award in favor of WAR Construction, Inc (‘WAR”). We affirm the judgment in part, reverse it in part, and remand the cause for further proceedings.

Facts and Procedural History

This is the second time this case has been before this Court. The relevant facts, as set forth in SEC I, are as follows:
“On July 12, 2007, SEC and WAR entered into a construction contract pursuant to which WAR, as the general contractor, agreed to build a condominium development in Tuscaloosa known as The Chimes Condominiums (‘The Chimes’) for SEC, as owner. Upon completion of the project, disputes arose between SEC and WAR concerning performance under the construction contract. Pursuant to the contract, those disputes were submitted to binding arbitration ....
“On February 16, 2011, a three-arbitrator panel ruled in favor of both SEC and WAR on their respective claims against one another, resulting in a net award to WAR of $373,929. SEC filed a motion for modification of the award. The arbitration panel issued a modified award on March 16, 2011, in which it stated that the net award to WAR was to be paid by SEC
“ ‘upon [SEC’s] receipt of reasonably appropriate and adequate releases of liens and claims against [SEC], its surety and the project involved in this proceeding from [WAR] and all of [WAR’s] subcontractors/suppliers that filed a lien on the project; provided that, in lieu of a release from such subcontractor/supplier, [WAR] may provide an adequate bond or other adequate security. This shall occur no later than May 13, 2011.’
“Neither party filed- an appeal of the award pursuant to Rule 71B, Ala. R. Civ. P., within 30 days of service of notice of the modified arbitration award.
“On April 22, 2011, WAR filed in the Tuscaloosa Circuit Court a ‘Motion for Clerk’s Entry of Arbitration Award as Final Judgment’ pursuant to Rule 71C, Ala. R. Civ. P. WAR attached a copy of the original arbitration award and the modified award to its motion. On April 25, 2011, SEC filed a response in opposition to WAR’s motion in which it stated that WAR had not fulfilled its obligation of providing SEC with releases of liens *1229 and claims held by WAR and by subcontractors on The Chimes construction project.
[[Image here]]
"... [0]n May 9, 2011, following a hearing, the circuit court did enter an order based upon the arbitration award. That order states:
“ ‘1. The documents from the arbitrators dated February 16, 2011 and March 16, 2011 are the awards. The Clerk is directed to enter the two documents from the arbitrators as a judgment under Rule 71(C)(f). Since the arbitrators did not address the issues, circuit court costs should be taxed as paid.
“‘2. The court and clerk are available to enforce the award if it is capable of enforcement through non-discretionary, perfunctory, ministerial acts such as garnishment, execution or other writ as provided in Ala.Code [1975,] § 6-6-13.
“ ‘8. Any issue regarding interpretation, modification, clarification or amendment of the awards should be presented to the arbitrators.
“ ‘4. If a certificate of judgment is requested under Ala.Code [1975,] § 6-9-210, the Clerk would need to determine whether such a request complies with the language of the arbitrators’ awards. No certificate of judgment should be prepared unless it complies with the arbitrators’ awards.
“ ‘The April 27 order is modified as noted above. All other claims are denied.’
“On May 13, 2011, WAR filed what it styled as a ‘Notice of WAR’s Compliance with the Conditions of Judgment.’ In the filing, WAR explained that it had supplied SEC with releases of all liens filed by subcontractors. As to its own lien, WAR ... represented that it ‘does not want to jeopardize its security for the judgment without adequate assurance SEC is going to pay the judgment.’ Thus, WAR attached copies of a signed satisfaction of the judgment and a signed release of WAR’s lien to its filing with the circuit court. WAR proposed that SEC ‘submit payment in full of the judgment’ to WAR’s attorney, the payment to be held in the attorney’s trust account. After payment had been submitted, WAR’s attorney would file the original signed satisfaction of the judgment with the circuit clerk, and he would file the original signed release of the lien in the Tuscaloosa Probate Court. WAR stated that its attorney would not release SEC’s funds to WAR until the release and the satisfaction of the judgment had been filed.
“SEC responded by filing a ‘Notice of WAR’s Noncompliance with Conditions of Judgment.’ In that filing, SEC contended that WAR had not supplied SEC with releases of claims by two subcontractors — Premier Electric Service Company, Inc., or Laco Woodworks, Inc. It also noted that WAR had admitted that it still had not provided SEC with a release of its own lien.
[[Image here]]
“On June 7, 2011, SEC appealed from the circuit court’s May 9, 2011, order, arguing that the circuit court erred in entering a judgment on the arbitration award before WAR had fulfilled its obligations under the award. Subsequently, WAR filed a cross-appeal, complaining that the circuit court had failed to take any nonministerial actions to enforce the judgment- [This Court] treat[ed] WAR’s cross-appeal as a petition for a writ of mandamus.”
SEC I, 110 So.3d at 372-75 (footnotes omitted). WAR also filed a motion to *1230 dismiss SEC’s appeal, which was denied in November 2011.
On November 9, 2012, this Court issued its decision in SEC I, addressing SEC’s appeal of the circuit court’s judgment of May 9, 2011 (“the May 9 judgment”), and WAR’s petition for mandamus relief. We rejected SEC’s argument that the May 9 judgment was not enforceable as a final judgment because WAR had not fulfilled its obligation to provide “ ‘reasonably appropriate and adequate releases of liens and claims against [SEC] ’ ” or to “ ‘provide an adequate bond or other adequate security’ ” in lieu of those releases, 110 So.3d at 372, and, therefore, that its obligation to pay WAR had not yet arisen.
SEC also argued that it was entitled to a judgment as a matter of law because the May 13, 2011, deadline for providing the releases had passed and, SEC argued, therefore, WAR could never comply with the award and SEC’s obligation to pay had been extinguished. This Court affirmed the May 9 judgment, stating:
“The final judgment the [circuit] court ordered the clerk to enter based upon the arbitrators’ decision is one that adjudicates the rights and responsibilities of the parties. Accordingly, it is enforceable as a final judgment. In essence, it is a final judgment that requires certain acts of both parties. As such, it contemplates further enforcement, and perhaps interpretative acts, by the circuit court. This, however, does not make it a nonfi-nal judgment.”
SEC I, 110 So.3d at 376-77.
We went on to state:
“WAR ... argues, with merit, as follows:
“ ‘To the extent that the circuit court is deterred by ambiguities in the arbitration award that constitutes its judgment, this Court has given straightforward direction. In [State Personnel Board v.] Akers, 797 So.2d [422,] 424[-25] [ (Ala.2000) ], this Court stated as follows:
“ ‘ “Courts are to construe judgments as they construe written contracts, applying the same rules of construction they apply to written contracts. See Hanson v. Hearn, 521 So.2d 953, 954 (Ala.1988). Whether a judgment is ambiguous is a question of law to be determined by the court. See Chapman v. Chapman, 634 So.2d 1024, 1025 (Ala.Civ.App.1994); Grizzell v. Grizzell, 583 So.2d 1349, 1350 (Ala.Civ.App.1991). If the terms of a judgment are not ambiguous, then they must be given their usual and ordinary meaning and their ‘legal effect must be declared in the light of the literal meaning of the language used’ in the judgment. Wise v. Watson, 286 Ala. 22, 27, 236 So.2d 681, 686 (1970); see Moore v. Graham, 590 So.2d 293, 295 (Ala.Civ.App.1991). However, if a term in a trial court’s judgment is ambiguous, then the trial court’s interpretation of that term ‘is accorded a heavy presumption of correctness and will not be disturbed unless it is palpably erroneous.’ Chapman, 634 So.2d at 1025.” ’
“Given the nature of the award made by the arbitrators in this case and the nature of the resulting judgment the circuit court properly ordered the clerk to enter, it is apparent that the circuit court must take some additional responsibility for enforcing that award and the resulting judgment. To the extent WAR complains in its petition of the circuit court’s reluctance to do so, we agree with WAR and, accordingly, order the circuit court to take appropriate action to enforce the judgment it has en *1231 tered based upon the arbitrators’ award.”
SEC I, 110 So.3d at 377-78.
Justice Murdock concurred specially with the Court’s decision, suggesting,
“[b]y way of example, [that] the circuit court might well find it appropriate to coordinate the parties’ fulfillment of the arbitration award and judgment entered on that award by requiring the parties to deposit releases or bonds and to make payment into the circuit court, with the provision that such documents and payment will be held by the court pending performance by the other party of its obligation under the judgment.”
110 So.3d at 378.
After the writ of mandamus had been issued, the circuit court set the matter for a final hearing. WAR moved the circuit court to establish its lien and to enforce the May 9 judgment, requiring SEC to pay the money awarded by the arbitrators. SEC opposed that motion, arguing that by granting WAR’S motion the circuit court would be modifying the arbitrators’ award, which, SEC argued, required that releases be provided before it was obligated to pay WAR and that the deadline for WAR’s fulfillment of its obligations under the award was “no later than May 13, 2011.” SEC argued that it was undisputed that WAR had not provided SEC with a release of its lien or a bond or security in place of the release by May 13, 2011. Thus, SEC argued, the circuit court should find that SEC’s obligation to WAR under the award had expired.
After the hearing, the circuit court entered a bench note requesting
“that each side submit a position statement or brief (three pages or less excluding any exhibits or affidavits) and to include (but not necessarily limited to) the following topics:
“1. What specific action should this court take to comply with the mandate [in SEC I ]?
“2. WAR contends that all subcontractor claims and liens have been released. SEC contends otherwise. The matter should be specifically addressed.
“3. Does the arbitration decision require WAR to release — give up— security for payment before the judgment can be entered? If so, under what authority would this court change that decision even if it is something this court would not have required.”
The circuit court entered an additional order that day stating:
“As an addendum to the earlier bench note, and to be more direct — Since the very first pleadings, this court took the position that granting the relief requested by WAR would require the arbitration decisions to be rewritten (perhaps to a more logical end result) but not simply interpreted. After re-reading the Supreme Court decision, however, compliance with the mandate does not appear possible without granting at least some of the relief. Again, with respect to question (1) in the earlier bench note, the parties should specifically inform this court how the Supreme Court mandate can be met.”
SEC responded to the circuit court’s request, arguing that compliance with this Court’s mandate in SEC I required that the judgment be enforced according to its terms and that the terms of the judgment had required WAR either to release its lien or to provide a bond, and to do so no later than May 13, 2011, before SEC was required to pay the money owed. SEC argued that WAR had not complied with those requirements by the deadline and, therefore, that the circuit court should find *1232 that WAR was not entitled to any relief and dismiss WAR’s claims.
WAR argued, among other things:
“The arbitration award and this Court’s judgment require payment upon receipt of releases or security. This language plainly contemplates an exchange.[1] After the modified award was issued, WAR notified SEC that it was prepared to release its lien in exchange for payment. SEC never agreed to an exchange and eventually made it plain it would not pay the arbitration award without judicial compulsion. Therefore, WAR has not been obligated to release its lien. To comply with the Supreme Court’s mandate this [cjourt must do two things: 1) verify that WAR has provided the required releases or security, and 2) verify that payment with interest is made to WAR. Justice Murdock’s concurrence [in SEC /] specifically recognizes that verification of payment is an essential element of enforcement of this [cjourt’s judgment. As is discussed below, all subcontractor liens and claims have been released. Therefore, the Supreme Court’s mandate can be accomplished by a [cjourt escrowed exchange of WAR’s lien release for SEC’s payment. WAR’S lien release is attached hereto and tendered to the [cjourt to be held in escrow in exchange for payment of the [cjourt’s judgment.
“ 1To the extent the award is imperfect in form, an exchange is plainly necessary to effect the intent of the award and promote justice between the parties. In its opinion, the Supreme Court expressly emphasized this. [cjourt’s am thority and obligation to correct imperfections not affecting the matter in controversy to effect the intent of the award and promote justice between the parties. [SEC I, 110 So.3d at 374] n. 3.”
WAR also argued that all the subcontractors’ liens had been released, that the subcontractors’ claims against WAR had been released, and that, because of a lack of privity, the arbitrators had no authority to require the release of claims directly between SEC and the subcontractors. WAR also argued that in SEC I the Supreme Court rejected SEC’s argument that its obligation to pay had been excused because of the passage of the May 13, 2011, deadline. WAR argued:
“SEC’s current argument to this court has already been rejected by the Supreme Court. In both its appeal and its response to WAR’s cross-appeal, SEC argued its obligation to pay the arbitration award never arose or was excused by the nonoccurrence of a condition precedent because prior to May 13, 2011, WAR did not release its lien or obtain claim releases from [two of the subcontractors]. The Supreme Court’s mandate [in SEC I ] rejected SEC’s condition precedent argument. The Supreme Court accepted and affirmed WAR’s argument that it would be unreasonable and unfair to require WAR to release its security without being paid. That is now the law of this case.”
(Citing Honda Mfg. of Alabama, LLC v. Alford, 47 So.3d 1283 (Ala.Civ.App.2010).)
On January 9, 2013, the circuit court entered an “Order Enforcing Arbitration Award Following Writ of Mandamus” (“the January 9 order”). The circuit court noted that it had a duty
“ ‘ “ ‘to comply strictly with the mandate of the appellate court according to its true intent and meaning, as determined by the directions given by the reviewing court.... The appellate court’s decision is final as to all matters before it, be *1233 comes the law of the case, and must be executed according to the mandate.’ ” ’ ”
(Quoting Ex parte Edwards, 727 So.2d 792, 792 (Ala.1998), quoting in turn Ex parte Alabama Power Co., 431 So.2d 151, 155 (Ala.1983), quoting in turn 5 Am.Jur.2d Appeal & Error § 991 (1962).)
The circuit court then stated:
“[WAR] initially attempted to file two arbitration awards as judgments, and moved this court to take certain action in response to those awards....
[[Image here]]
“Neither party appealed the arbitrators’ awards. Instead, WAR filed motions with this court seeking to order certain exchanges of documents and funds. When initially presented, this court had questions about arbitration awards, including, but not limited to the following:
“ — The language of the March 16 award obligates SEC to pay WAR ‘upon receipt of reasonably appropriate and adequate releases of liens.’ Did the arbitrators intend for the lien releases to be given to SEC in advance of the obligation to pay? Stated otherwise, did the arbitrators intend for WAR to give up its security in advance of payment?
“ — Why was WAR required to obtain all lien releases by May 13, 2011? What was to happen if WAR failed to release its lien or post the required bond or other security for any subcontractors by that date? Would the obligation of SEC to pay then be extinguished? Was the interest award of 3.25% per annum to be held in abeyance pending this action?
“This court stated that the parties should go back to the arbitrators and seek corrective or interpretive action in that forum.... The arbitrators declined to take any further action. This court then found that the awards had to be entered as written as judgments pursuant to Ala. R. Civ. P. 71C. But WAR had not given SEC a release of the liens as apparently contemplated by the awards. WAR instead sought to havé this court order an alternative procedure. The action sought by WAR seemed to require the awards to be rewritten — perhaps to a more logical end — but not simply interpreted or enforced by this court. As such, judicial relief did not appear to be available and the orders were not entered. ... [T]he arbitrators were given the opportunity to correct or modify their award to more clearly express their intent. They declined, and thus must have said exactly what they intended to say.
“Both sides sought appellate review. ...
“On November 27, [2013], after [the Supreme Court’s decision in SEC I ] became final, this court set a hearing for December 19.... The December 19 hearing did not result in a consensus of opinion as to this court’s next step, and the parties were ordered to file short briefs setting forth how this court should follow the Supreme Court mandate. The results have not been entirely satisfactory. WAR has made proposals on the manner in which the arbitrators’ award can be implemented. SEC continues to assert that the awards are not subject to enforcement.
“It is presumed that the issues were adequately and appropriately briefed to the Supreme Court. In other words, the arguments of SEC were,apparently rejected and the arguments of WAR were accepted. My directive from that Court is not to determine if the judgment is valid or capable of being implemented, but instead, to ‘enforce’ it. After again reviewing the Supreme Court *1234 mandate, and applying the principles of Ex parte Edwards [, 727 So.2d 792 (Ala. 1998),] which require strict adherence to the directive, the following is ordered:
“1. Citing the language used by the arbitrators and after reviewing the responses of the parties, all liens and claims against SEC, its surety, and the project from WAR’s subcontractors/suppliers that filed a lien on the project appear to have been released and/or adequate security has been provided.... WAR shall deliver to the circuit clerk of Tuscaloosa County the original release of its mechanic’s lien and mechanic’s lien release bond together with an executed satisfaction of judgment and any proposed orders required to be entered by this court extinguishing the bond or lien. The clerk will hold the release for delivery to SEC upon the payment of the judgment amount plus interest as provided herein.
“2. To satisfy the judgment awarded by the arbitrators, SEC may deposit the sum of Three Hundred Seventy-Three Thousand Nine Hundred Twenty Nine Dollars and Zero Cents ($373,929.00) together with accumulated interest (at the rate ordered by the arbitrators) to the circuit clerk of Tuscaloosa County. It appears that WAR attempted to comply with what the Supreme Court has ordered this court to implement as of May 13, 2011 (the date of WAR’s ‘Notice of ... Compliance With Conditions of Judgment’), and therefore, the interest awarded by the arbitrators is applicable from May 13, 2011, to the date of payment to the clerk. Upon receipt and collection of such funds, the clerk shall simultaneously distribute the funds to WAR and shall deliver to SEC the release(s) referenced in
(1). The clerk shall then file the satisfaction of judgment.
“3. After WAR has tendered the documents referenced in (1) to the clerk, execution may proceed on the judgment through any available means under Alabama law if not satisfied by the deposit of the funds referenced in (2).
“4. Any further orders required to implement the foregoing will be rendered as necessary.”
SEC appealed the January 9 order to this Court, and this second appeal is now before this Court.

Analysis

SEC first argues that “the circuit court failed to enforce the arbitration award and judgment according to the literal language contained therein.” SEC’s brief, at 32. Specifically, SEC argues, “[t]his Court’s mandate [in SEC I ] was for the Circuit Court to ‘take appropriate action to enforce the judgment.’ ” SEC’s brief, at 32 (quoting SEC I, 110 So.3d at 378). SEC argues that, because the judgment was unambiguous, “the only way the Circuit Court could give effect to the arbitrators’ decision was to construe the arbitration award and judgment ‘in the light of the literal meaning of the language used.’ ” SEC’s brief, at 33 (quoting SEC I, 110 So.3d at 377). SEC argues that, pursuant to the literal language of the judgment, its obligation to pay WAR was contingent upon WAR’s providing by May 13, 2011, releases of or security for liens and claims against SEC filed by WAR and any of its subcontractors who had filed liens against SEC. SEC argues that WAR’s performance by May 13, 2011, was a condition precedent to SEC’s obligation to pay, that that condition precedent was not met, and that, therefore, the circuit court “should *1235 have determined that SEC owed WAR nothing.” SEC’s brief, at 34.
This is essentially the same argument made by SEC in SEC I. In its brief on appeal in that case, SEC argued:
“The Circuit Court’s entry of the arbitration award as a final judgment did not give effect to the arbitrators’ decision. The arbitration award made [SEC’s] obligation to pay contingent on WAR’s performance of certain obligations which were conditions precedent to [SEC’s] obligation. [SEC] had no obligation to perform under the arbitration award when the Circuit Court entered final judgment. Therefore, entry of the arbitration award as a final judgment was improper.”
SEC also argued:
“As a result of WAR’s failure to perform its obligations under the arbitration award on or before May 13, 2011, [SEC] has no obligation to pay WAR. Further, it is now impossible for WAR to satisfy the conditions precedent. WAR did not meet the May 13, 2011, deadline set in the arbitration award for full performance of its obligation. Accordingly, [SEC] shall never have any obligation under the arbitration award to pay WAR.”
(Citations omitted.) SEC asked this Court in SEC I to render a judgment as a matter of law in its favor on WAR’s claims against it.
Although this Court did not make express findings in SEC I as to the existence or effect of the alleged condition precedent or the timeliness of WAR’s compliance with the arbitration award, this Court declined to enter a judgment as a matter of law in SEC’s favor and, instead, affirmed the May 9 judgment as final and enforceable. We stated: “[The May 9 judgment] ... is a final judgment that requires certain acts of both parties. As such, it contemplates further enforcement, and perhaps interpretative acts, by the circuit court. This, however, does not make it a nonfinal judgment.” SEC I, 110 So.3d at 376-77 (emphasis added). We went on to note:
“Given the nature of the award made by the arbitrators in this case and the nature of the resulting judgment the circuit court properly ordered the clerk to enter, it is apparent that the circuit court must take some additional responsibility for enforcing that award and the resulting judgment. To the extent WAR complains in its petition of the circuit court’s reluctance to do so, we agree with WAR and, accordingly, order the circuit' court to take appropriate action to enforce the judgment it has entered based upon the arbitrators’ award.”
SEC I, 110 So.3d at 377-78 (emphasis added).
By affirming the May 9 judgment as a final judgment that “contemplate[d] further enforcement” and ordering the circuit court “to take appropriate action to enforce the judgment,” this Court effectively rejected SEC’s argument that it was entitled to a dismissal of WAR’s claims based on WAR’s failure to satisfy the alleged condition precedent by May 13, 2011. SEC did not apply for a rehearing. Thus, as the circuit court noted in the January 9 order, our rejection of those arguments in SEC I is now the law of the case, and SEC is not entitled to reconsideration of those issues in this second appeal. See Scrushy v. Tucker, 70 So.3d 289, 303-04 (Ala.2011) (“ ‘Under the law of the case doctrine, “[a] party cannot on a second appeal relitigate issues which were resolved by the Court in the first appeal or which would have been resolved had they been properly presented in the first appeal.” ’ ” (quoting Kortum v. Johnson, 786 N.W.2d 702, 705 (N.D.2010), *1236 quoting in turn State ex rel. North Dakota Dep’t of Labor v. Riemers, 779 N.W.2d 649 (N.D.2010) (emphasis omitted))); see also Bagley v. Creekside Motors, Inc., 913 So.2d 441, 445 (Ala.2005) (‘““Under the doctrine of the ‘law of the case,’ whatever is once established between the same parties in the same case continues to be the law of that case, whether or not correct on general principles, so long as the facts on which the decision was predicated continue to be the facts of the case.” “It is well established .that on remand the issues decided by an appellate court become the ‘law of the case,’ and that the trial court must comply with the appellate court’s mandate.” ’ ” (quoting Southern United Fire Ins. Co. v. Purma, 792 So.2d 1092, 1094 (Ala.2001) (internal citations omitted))). Thus, SEC has not demonstrated that the circuit court erred in determining that SEC’s obligations under the May 9 judgment remain enforceable.
SEC also argues that “[t]he circuit court modified the arbitration award and [the May 9] judgment to relieve WAR from its obligations to provide lien and claims releases.” SEC’s brief, at 43. SEC argues that “[t]he arbitration award provides that payment from [SEC] was not due unless and until WAR provided [SEC] with ‘[reasonably appropriate and adequate releases of liens and claims’ against [SEC] ” and that “WAR has not released its own lien or claims, nor has it provided releases of claims against [SEC] from Heritage Masonry[, Inc. (‘Heritage Masonry’),] or Premier [Electric Service Company, Inc. (‘Premier’) ].” SEC’s brief, at 43. Heritage Masonry and Premier were subcontractors on The Chimes project that had filed liens against SEC.[1]
With regard to WAR’s lien and claims against SEC, SEC argues that “the [January 9] order reverses the parties’ obligations under the arbitration award and judgment.” SEC’s brief, at 46. The January 9 order provides:
“WAR shall deliver to the circuit clerk of Tuscaloosa County the original release of its mechanic’s lien and mechanic’s lien release bond together with an executed satisfaction of judgment and any proposed orders required to be entered by this court extinguishing the bond or lien. The clerk will hold the release for delivery to SEC upon the payment of the judgment amount plus interest as provided herein.”
Although there appears to be some merit to SEC’s argument that the January 9 order changes the manner in which SEC and WAR were asked to fulfill their obligations under the arbitration award and the May 9 judgment, it does not relieve WAR of any of its obligations. WAR is still required to provide “reasonably appropriate and adequate releases” of its liens and claims and the liens and claims of the relevant subcontractors before it can receive the money it is owed by SEC. The January 9 order effectuates the intent of the arbitration award that the liens and claims against SEC be released and that the money owed to WAR be paid. SEC has not demonstrated that the circuit court erred in this regard.[2]
*1237 SEC also argues that the circuit court erred in concluding that WAR had complied with the arbitration award and the May 9 judgment because, it argues, “there is no evidence that WAR obtained or provided to [SEC] any release of claims against [SEC] by Heritage Masonry or Premier.” SEC’s brief, at 35. SEC argues that both Heritage Masonry and Premier expressly reserved their claims against SEC. Therefore, SEC argues, those releases could not satisfy the “reasonably appropriate and adequate release of ... claims” requirement of the arbitration award and the May 9 judgment.
In May 2009, Premier executed a “Declaration to Cancel Lien,” in which it “with[drew] and canceled] its lien against the property of [SEC].” However, the declaration also provided that “Premier still asserts that the underlying debt for which the lien was recorded is still outstanding and due to be paid and reserves all its other rights and remedies it may have against [SEC] in order to collect this debt.” In January 2012, Premier executed an “Acceptance of Final Payment, Release & Confidentiality Agreement,” in which it acknowledged receipt from WAR of “full and final payment of all amounts due for Premier’s work performed on The Chimes Condominium in Tuscaloosa, Alabama.” The agreement also provided: “Premier warrants that there are no outstanding claims, obligations, encumbrances, or liens for labor, services, materials, equipment, taxes, or other items incurred in connection with its scope of work on The Chimes project.” These documents, taken together, are sufficient to support the circuit court’s finding that “all liens and claims against SEC, its surety, and the project” had been released by Premier.
In August 2009, Heritage Masonry executed a pro tanto release, in which Heritage Masonry released all of its claims against WAR. The release includes the following provision: “This release does not limit or restrict Heritage’s claims or actions it has or may have against [SEC] or any individual member, officer or shareholder of [SEC].” Because of this language, the pro tanto release is not sufficient, by itself, to satisfy the requirement of a “reasonably appropriate or adequate release” of Heritage Masonry’s claims against SEC. WAR has not directed this Court to any other document presented to the circuit court that addresses Heritage Masonry’s claims against SEC, nor is there any indication that WAR provided security in lieu of that release.
WAR argues that SEC’s argument with regard to the Heritage Masonry release is
“based on an unreasonable interpretation of the [arbitrators’] modified award. The modified award states that its purpose is to deal with SEC’s request for relief with respect to liens filed by WAR and its subcontractors. The judgment’s later reference to ‘liens and claims’ is simply a redundant phrase such as ‘null and void,’ ‘release and discharge,’ ‘cease and desist,’ or ‘will, devise, and bequeath.’ Redundancy is one of the hallmarks of American legal English. The plain intent of the modified award was to give SEC its project free of liens in exchange for payment. All subcontractor liens have been released or bonded.”
WAR’s brief, at 8-9 (footnote omitted).
However, as this Court noted in SEC I, WAR has itself acknowledged that *1238 “ ‘ “[i]f the terms of a judgment are not ambiguous, then they must be given their usual and ordinary meaning and their ‘legal effect must be declared in the light of the literal meaning of the language used’ in the judgment.” ’ ” 110 So.3d at 377 (quoting WAR’s brief in SEC I, quoting in turn State Pers. Bd. v. Akers, 797 So.2d 422, 424 (Ala.2000), quoting in turn Wise v. Watson, 286 Ala. 22, 27, 236 So.2d 681, 686 (1970)). The words “claims” and “liens” are distinct both in their “usual and ordinary meaning” and in terms of legal usage. Black’s Law Dictionary defines a “claim” as “[t]he aggregate of operative facts giving rise to a right enforceable by a court” and “any right to payment or to an equitable remedy, even if contingent or provisional.” Black’s Law Dictionary 281-82 (9th ed.2009). A “lien” is defined as “[a] legal right or interest that a creditor has in another’s property, lasting usu. until a debt or duty that it secures is satisfied.” Black’s Law Dictionary 1006. Although the two terms might sometimes overlap, they are not synonymous, and there is no indication that the arbitrators intended them to be so.
WAR also argues that “[sjince neither Heritage nor Premier are in privity with the WAR/SEC contract, WAR’s releases protect SEC completely from any claim arising out of, i.e.[, pjassing through, or relating to[,] the WAR/SEC contract,” WAR’s brief, at 9, and that, “[ujnder Alabama law, the only claim a subcontractor can assert against an owner arising out of or related to the general construction contract is a mechanic’s lien.” WAR’s brief, at 10. However, as noted in SEC’s brief, subcontractors’ claims against owners are not so limited in Alabama. See, e.g., Berkel & Co. Contractors, Inc. v. Providence Hosp., 454 So.2d 496, 501 (1984) (recognizing that, even in the absence of privity of contract, negligence claims can, in some circumstances, be maintained by a subcontractor against an owner). WAR cites no relevant authority to the contrary.[3]
Because Heritage Masonry expressly reserved in the pro tanto release “claims or actions [that] it ha[d] or may have against [SEC] ” and because there is no indication that WAR provided any bond or security in lieu of a release, WAR has not yet fully complied with the requirements of the May 9 judgment. Thus, the circuit court erred in finding in the January 9 order that “all liens and claims against SEC ... from WAR’s subcontractors/suppliers that filed a lien on the project ... ha[d] been released and/or adequate security ha[d] been provided.” We hold further that the circuit court erred in finding that WAR had “attempt[ed] to comply with what the Supreme Court has ordered this court to implement as of May 13, 2011,” and that it was entitled to have the interest owed under the arbitrators’ award and the May 9 judgment calculated from that date. Therefore, we reverse the January 9 order as it relates to the above matters and remand the cause for further proceedings consistent with this opinion. In all other respects, the order is affirmed.
AFFIRMED IN PART; REVERSED IN PART; AND REMANDED.
*1239 STUART, BOLIN, PARKER, MAIN, and WISE, JJ., concur.
MOORE, C.J., and MURDOCK and SHAW, JJ., concur in part and dissent in part.

. As noted in SEC I, SEC argued to the circuit court in its “Notice of WAR’s Noncompliance with Conditions of Judgment" that "WAR had not supplied SEC with releases of claims by two subcontractors—[Premier] or Laco Woodworks, Inc.” 110 So.3d at 375. However, SEC has not renewed this argument on appeal as it relates to Laco but has, instead, argued that "WAR failed to submit any documentation showing that either [Heritage Masonry or Premier] had released its claims against [SEC].” SEC’s brief, at 13.

. SEC also argues that "[t]he circuit court modified the substance of the arbitration award and judgment to relieve WAR from its *1237 obligation to provide releases by May 13, 2011.” SEC’s brief, at 47. However, as noted previously, this Court rejected in SEC I the argument that WAR’s alleged failure to satisfy the alleged condition precedent before the May 13, 2011, deadline rendered the May 9 judgment unenforceable, and reconsideration of those claims in this appeal is barred by the law-of-the-case doctrine. See Scrushy, supra.

. WAR relies on Severin v. United States, 99 Ct.Cl. 435 (1943), in support of its argument. However, Severin, which is persuasive authority at most, involved a limited waiver by the United States government of immunity from suit for breach-of-contract claims arising in a construction project. The court in Severin concluded that because "the Government ... ha[d] not consented to be sued except, so far as [is] relevant to this case, for breach of contract" and because the government had no contract with the subcontractor, "it [was] not liable to, nor suable by him.” 99 Ct.Cl. at 442. The United States Court of Claims decision does not indicate that, in all circumstances, a lack of privity prevents suit by a subcontractor against the owner of a project, and that case is inapposite here.