STUART, Justice.
Southeast Construction, L.L.C. (“SEC”), appeals the order of the Tuscaloosa Circuit Court finding that WAR Construction, Inc. (‘WAR”), had provided SEC with certain releases as previously ordered by the circuit court and that SEC was accordingly now required to pay the outstanding $263,939 remaining on a $373,939 judgment previously entered on a February 16, 2011, arbitration award obtained by WAR against SEC, along with interest accruing from February 16, 2011.[1] We affirm in part and reverse in part.
*362 I.
On June 12, 2007, SEC and WAR entered into a construction contract pursuant to which WAR was to serve as the general contractor for SEC on a condominium development in Tuscaloosa known as The Chimes. As the development neared completion, a dispute arose in which WAR claimed that it had not been paid the total amount it was-due for the work it had performed, while'SEC claimed that WAR had not completed its work and that portions of its allegedly completed work were defective. Pursuant to the terms of the June 12, 2007, contract, the dispute was submitted to arbitration and, on February 16, 2011, a’three-arbitrator'panel ruled in favor of both parties on their respective claims; with the net result being an award in favor of WAR for $373,939. The panel further stated that “[p]osfc-award interest shall accrue at the rate of 3.25% per an-num from the date of the award until- it is paid in full” and that “[t]he above sums are to be paid on or before 30 days from the date of this award.”
Thereafter, SEC moved the arbitration panel to modify its award inasmuch as the panel had not addressed SEC’s request for relief with respect to certain liens that had been filed by WAR and some of its subcontractors and suppliers. The panel found SEC’s request to be well taken and, on March 16, 2011, modified the sentence in the award concerning the time in which SEC should make payment, quoted supra, to read:
“The above sums are to be paid upon [SEC’s] receipt of reasonably appropriate and adequate releases of liens and claims against [SEC], its surety and the project involved in this proceeding from [WAR] and all of [WAR’s] subcontractors/suppliers that filed a lien on the project; provided that, in lieu of a release from such subcontractor/supplier, [WAR] may provide an adequate bond or other adequate security. This shall occur no later than May 13,2011.”
The panel stated that the February 16, 2011, award was reaffirmed in all other respects. Neither SEC nor WAR pursued an appeal of the arbitration award with the Tuscaloosa. Circuit Court as allowed by Rule 71B, Ala. R. Civ. P.
On April 22, 2011, WAR moved the circuit court to enter a judgment enforcing the arbitration award pursuant to Rule 71C, Ala. R. Civ. P. SEC opposed the motion, arguing that WAR had not yet provided it with the releases required by the modified arbitration award. The circuit court initially declined to enter the requested judgment, reasoning that the arbitration award was not yet final based on WAR’s failure to provide the required releases, as well ás the need for the arbitration panel to determine whether those releases were adequate. A hearing was subsequently held at which WAR.acknowledged that SEC was entitled to the required releases but also stated that it was hesitant to release any liens before receiving payment because the liens' were its only way of ensuring payment. On May 9, 2011, the circuit court entered an- order directing the circuit clerk to enter the February' 16, 2011, arbitration award, as modified on March 16; 2011, ,as a final judgment pursuant to Rule 71C(f), Ala. R. Civ. P., but also noting that no certificate of judgment was to be issued unless that certificate “complie[d] with the arbitrators’ award.” The circuit court further noted that any concerns the parties had regarding the interpretation of the arbitration *363 award needed to be presented to the arbitration panel.[2]
On May 13, 2011 — the deadline the arbitration panel had set for WAR to provide SEC with the require.d releases — WAR filed a notice with the. circuit court stating that it had supplied SEC with all of WAR’S subcontractors’ releases and that it would provide its own release when SEC put forth the funds required to fulfill the terms of the arbitration award. SEC thereafter notified the circuit court that it had not received adequate releases from two of WAR’S subcontractors and, as WAR had admitted, from WAR itself. The circuit court scheduled a hearing to further consider the matter; however, on June 7S 2011, before that hearing was held,SEC filed an appeal with this Court, arguing that the circuit court’s May 9, 2011, order directing the circuit clerk to enter a judgment on the arbitration, award was erroneous because, it stated, WAR- had not provided the required releases. . WAR subsequently filed a cross-appeal, treated by -this Court as a petition for ,a writ of mandamus, effectively arguing that the circuit court was exceeding its discretion by not acting to enforce the judgment entered on the arbitration award.
In Southeast Construction, L.L.C. v. WAR Construction, Inc., 110 So.3d 371, 376 (Ala.2012) (“SEC I"), this Court ruled on the dispute, holding that the .circuit court had acted properly in ordering the circuit clerk to enter a- final judgment based- on the arbitration award .because that final judgment “adjudicate[d] the rights and responsibilities of the parties.” Nevertheless, we noted that the final judgment required further acts by the parties and, accordingly, further acts and supervision by the circuit court:
“Given the nature of the award made by the arbitrators in this case and the nature of the resulting judgment the circuit court properly ordered the clerk to enter,-it is apparent that the circuit court must take some additional responsibility for enforcing that award and the resulting judgment. To the extent WAR complains in its petition of the circuit court’s reluctance to do so, we agree with WAR and, accordingly, order the circuit court to take appropriate action to enforce the judgment it has entered based' upon the arbitrators’ award.”
110 So.3d at 377-78. Justice Murdock, in his opinion concurring specially, suggested that, on remand, the circuit court might facilitate the matter by accepting SEC’s payment and the releases submitted by WAR and then transferring them to the other party once .all obligations had been fulfilled. 110 So.3d at 378 (Murdock, J., concurring specially).
The' circuit' court thereafter conducted a hearing and ordered briefing from the parties to determine how to best comply with this Court’s directive in SEC 1 and to enforce ‘the May 9,2011, judgment entered on the arbitration award., During this process, WAR appears to have offered proposals concerning how to best give effect to the arbitration award, while SEC took the position that, because WAR had not provided all. the required releases by the May 13, 2011, deadline set by the arbitration panel, its obligation to pay the sum ordered in the arbitration award was extinguished. On January 9, 2013, the circuit court entered an order rejecting SEC’s argument and attempting to implement a mechanism similar to that suggest *364 ed by Justice Murdock in his special concurrence in SEC I. Specifically, the circuit court ordered:
“1. Citing the language used by the arbitrators and after reviewing the responses of the parties, all liens and claims against SEC, its surety, and the project from WAR’s subcontractors/suppliers that filed a,lien on the project appear to have been released and/or adequate security has been provided. To the extent that any original document is required to confirm this release, it should be submitted by WAR to the circuit clerk of Tuscaloosa County. The clerk will hold the document for delivery to SEC upon the payment of the judgment amount plus interest as provided herein. WAR shall deliver to the circuit clerk of Tuscaloosa County the original release of its mechanic’s lien and mechanic’s lien release bond together with an executed satisfaction of judgment and any-proposed orders required to be entered by this court extinguishing the bond or lien. The clerk will hold the release for delivery to SEC upon the payment of the judgment amount plus interest as provided herein.
“2. To satisfy the judgment awarded by the arbitrators, SEC may deposit the sum of [$373,939] together with accumulated interest (at the rate ordered by the arbitrators) to the circuit clerk of Tuscaloosa County. It appears that WAR attempted to comply with what the Supreme Court has ordered this court to implement as of May 13, 2011 (the date of WÁR’s ‘Notice of ... Compliance With Conditions of Judgment’), and therefore, the interest awarded by the arbitrators is applicable from May 13, 2011, to the date of payment to the clerk. Upon receipt and collection of such funds, the clerk shall simultaneously distribute the funds to WAR and shall deliver to SEC the release(s) referenced in (1). The clerk shall then file the satisfaction of judgment.
“3. After WAR has tendered the documents referenced in (1) to the clerk, execution may proceed on the júdgment through any available means under Alabama law if not satisfied by the deposit of the funds referenced in (2).
“4. Any further orders required to implement the foregoing will be rendered as necessary.”
On January 25, 2013, WAR filed notice with the circuit court that it had submitted all the required releases; four days later, on January 29, 2013, SEC filed its objection to WAR’s claim, again arguing that the releases submitted for two of WAR’s subcontractors were inadequate. On February 22, 2013, before the circuit court could rule on the adequacy of the releases, SEC initiated another appeal to this Court, arguing again that WAR had forfeited any right to receive the sum ordered in the arbitration award because it had failed to deliver the required releases by the date ordered by the arbitration panel and contesting any claim that WAR had provided all the required releases. In Southeast Construction, L.L.C. v. WAR Construction, Inc., 159 So.3d 1227 (Ala.2014) (“SEC II ”), we noted that we had already rejected the former argument in SEC I and that our rejection of that argument was accordingly the law of the case, but we also concluded that the latter argument was indeed meritorious inasmuch as one of WAR’s subcontractors, Heritage Masonry, Inc., had, in its purported release, reserved its right thereafter to pursue certain claims against SEC:
“Because [WAR’s subcontractor] Heritage Masonry expressly reserved in the pro tanto release ‘claims or actions [that] it ha[d] or may have against [SEC]’ and because there is no indica *365 tion that WAR provided any bond or security in lieu of a release, WAR has not yet fully complied with the requirements of the May 9 judgment. Thus, the circuit court erred in finding in the January 9 order that ‘all liens and claims against SEC ... from WAR’S subcontractors/suppliers that filed a lien on the project ... ha[d] been released and/or adequate security ha[d] been provided.’ We hold further that the circuit court erred in finding that WAR had ‘attempted] to comply with what the Supreme Court has ordered this court to implement as of May 13, 2011,’ and that it was entitled to have the interest owed under the arbitrators’ award and the May 9 judgment calculated from that date. Therefore, we reverse the January 9 order as it relates to the above matters and remand the cause for further proceedings consistent with this opinion. In all other respects, the order is affirmed.”
159 So.3d at 1238. Following the release of our opinion in SEC II on May 9, 2014, WAR applied for a rehearing, arguing for the first time that the circuit court’s January 9, 2013, order — which was the subject of SEC’s appeal in SEC II, but as to which WAR had not cross-appealed — was in error inasmuch as it ordered interest to be calculated from May 13, 2011, when the arbitration award plainly stated that “[p]ost-award interest shall accrue at the rate of 3.25% per annum from the date of the award until it is paid in full.” Accordingly, WAR argued that interest should be calculated from February 16, 2011. On August 22, 2014, we denied WAR’S application for rehearing without an opinion, as is our standard practice when an argument is raised for the first time in an application for a rehearing. See, e.g., Water Works & Sewer Bd. of Selma v. Randolph, 833 So.2d 604, 608 (Ala.2002) (opinion on application for rehearing) (“The well-settled rule of this Court precludes consideration of arguments made for the first time on rehearing.”).
Even before its application for a rehearing was decided, however, WAR took action to remedy the inadequate release it had previously submitted for Heritage Masonry and, on June 12, 2014, WAR sent a newly executed release directly to SEC. There is no dispute that this release was adequate to serve as a full release, and SEC has conceded that fact. On September 8, 2014, WAR moved the circuit court to enforce the judgment entered on the arbitration award, noting that it had now submitted all the required releases and enclosing a copy of the Heritage Masonry release sent to SEC on June 12. Thereafter, the circuit court scheduled a hearing and ordered briefs to determine whether WAR had finally submitted all the required releases and, if so, from what date interest should be calculated on the arbitration award. SEC took the position that WAR still had not properly submitted the required releases inasmuch as the circuit court’s January 9, 2013, order had required WAR to submit an original copy of all releases to the circuit clerk and WAR had sent the original copy of the final release directly to SEC on June 12 and sent the circuit clerk only a copy approximately three months later on September 8. Thus, SEC argued, WAR’S obligations would not be fulfilled until an original copy of the final release was submitted to the circuit clerk, and only then could interest begin to accrue. If the circuit court recognized the copy of the final release the clerk had received, however, SEC argued that interest could not begin to accrue until September 8 when the clerk received that copy. WAR argued that it had now submitted all the required releases and that, regardless of when they were submitted, WAR was due interest from the date of *366 the arbitration award — February 6, 2011 — • pursuant to the unambiguous statement in that award that interest shall accrue “from the date of the award until it is paid in full.” "
On November 24, 2014, the circuit court entered its final judgment,, stating:
“At.the November 18 hearing, SEC and WAR agreed that the new release of Heritage Masonry was sufficient, but disagreed about the correctness of the manner in which it was presented to the court. WAR claimed to have mailed the original release to SEC in June, and then filed a copy as .part of the September 8 notice of compliance. SEC argues that WAR was required to file the original, release with the clerk,, as , mandated by the January 9 order. Because WAR has not filed the release with the clerk, SEC claims that WAR is not in compliance with the January 9 order and therefore interest has not yet begun to accrue. As the rationale for this conclusion, SEC states that the Supreme Court’s intent was that interest should not accrue until WAR complied with the January 9 order. WAR responds that.it fulfilled the substance if, not the form of the order, because it mailed [the] release to SEC and SEC does not dispute it received the release. WAR claims that interest began to accrue on February 16, 2011, the date of the original arbitration award. The plain language of the award ■states that-interest on the award ‘shall accrue at the rate of. 3.25% per annum from-the date of the-award until it is paid in full.’
“After reviewing both of the Supreme Court’s mandates in this case, and applying the principles of Ex parte Edwards, [727 So.2d 792 (Ala.1998),] which require strict adherence to those mandates, the court finds and orders as follows:
“1. The ‘release of claims’ from Heritage Masonry is a ‘reasonably appropri- . ate and adequate release.’ SEC agreed in open court that the release-was sufficient and that it received the' original release. The provision for WAR filing the original release with the clerk was for -WAR’S benefit, which it chose to -waive. Furthermore, the court finds - that WAR complied with the spirit of the January 9 order and,. therefore, mailing the Heritage Masonry release to SEC satisfied WAR’S obligation under the January 9 order. Since SEC now holds the original release, it may file the release with the clerk of the court should it deem it necessary.
[[Image here]]
“6. Based upon the May 9, 2011 judgment, it is further ordered that SEC shall pay interest on the money judgment, which ‘shall accrue at the rate of 3.25% per annum from the date of the award [February 6, 2011,] until it is paid in full.’ Accrued interest as of the date of this order is $45,458.52, which currently accrues at a daily rate of $23.50. Within three (3) days from the date of this order, SEC shall pay to the clerk all interest accrued through the date of payment of the money judgment.”
On November 26, 2014, SEC filed its notice of appeal to this Court.
II.
SEC presents two issues in its appeal: (1) whether the circuit court erred by ruling that WAR had properly submitted all required releases and (2) whether the circuit court erred in ordering SEC to pay interest accruing from February 16, 2011, the date of the original arbitration award.[3] These issues are both issues of *367 law; accordingly, we review the circuit court’s judgment de novo, affording it no presumption of correctness. See, e.g., Ex parte Graham, 702 So.2d 1215, 1221 (Ala.1997) (“[0]n appeal, the ruling' on a question of law carries no presumption of correctness, and this Court’s review is de novo”).
III.
SEC first argues that the circuit court erred by concluding that WAR had fulfilled its responsibility to- procure releases for SEC from all of WAR’S subcontractors and suppliers. Specifically, SEC argues that the circuit court had, in its January 9, 2013, order, stated that WAR was required to submit original copies of all releases to the circuit clerk, yet to date WAR had failed to submit to the circuit clerk an original copy of a release from Heritagé Masonry. In fact, however, SEC acknowledges that it received directly from WAR the original copy of the Heritage Masonry-release -and that the language of that "release is satisfactory in all respects. Thus, it would appear that the only reason the circuit clerk is not in possession of that original copy is because SEC has not sent it to the clerk. We agree with the circuit court that WAR has fulfilled its obligation to submit the required releases inasmuch as “[t]he provision for' WAR’S filing the original reléase with the clerk was for WAR’S benefit” and WAR apparently waived that protection by sending the original release directly to SEC and a copy to the circuit clerk. -
Contrary to SEC’s assertion, nothing in SEC II prevents WAR from waiving the protection offered by the circuit court’s creation of a mechanism by which to exchange the .releases for payment of the arbitration award. SEC argued in SEC II that the January. 9, 2018, order was improper, and we stated:
“Although there appears to be some merit to SEC’s argument that'the January 9 order changes the manner in which SEC and WAR were asked to fulfill their obligations under the arbitration award and the May 9 judgment, it does not relieve WAR of any of its obligations. WAR is still required to provide ‘reasonably appropriate and adequate releases’ of its liens and claims and the liens and claims of the relevant subcontractors before-it can receive the money it is owed by SEC. The January 9 order effectuates the intent of the arbitration award that, the liens and -claims against SEC be released and that the money owed to WAR be paid.”
159 So.3d at 1236. Thus, we recognized that the January 9 order was proper inasmuch as it effectuated the intent of the arbitration award that the releases be given and the award paid. Although we did not find error in the procedure the circuit court had set up to facilitate the exchange, we did not hold that the circuit court had to rigidly adhere to that procedure or that the circuit court was barred from modifying that procedure in any way on remand if so doing would better bring about. the ultimate end sought — an exchange of releases and payment of the award. The arbitration award in fact stated that SEC was to pay the award “upon [SEC’s] receipt of reasonably appropriate and adequate releases of liens and claims against [SEC]” (emphasis added), and it is undisputed that SEC actual *368 ly received the original, satisfactory, final release from Heritage Masonry. The circuit court was satisfied with the manner in which WAR complied with its instructions to provide the release, and we are as well.
IV.
SEC next argues that, even if WAR has satisfactorily provided all required releases, the circuit court erred by ordering SEC to pay interest on the arbitration award from the date of the arbitration award — February 16, 2011 — instead of from a date no earlier than September 8, 2014, the date WAR moved the circuit court to enforce the judgment entered on the arbitration award and submitted to the circuit clerk a copy of the Heritage Masonry release sent to SEC on June 12. The circuit court held that interest should accrue from the February 16 date because the arbitration award itself expressly provided that interest “shall accrue ... from the date of the award” and because the arbitration panel declined to modify that part of its award even after modifying the award to provide that SEC did not have to make payment until after SEC received the releases it sought.[4] Notwithstanding that aspect of the arbitration award, however, SEC argues that the circuit court had previously held in the January 9, 2013, order that was the subject of SEC II that interest would begin to accrue on the date WAR notified the circuit court that it had complied with the requirement that it provide releases, that WAR had failed to appeal that aspect of the circuit court’s judgment, and that that holding accordingly became the law of the case. For the reasons that follow, we agree.
WAR first told the circuit court that it had provided SEC with the required releases on May 13, 2011. SEC thereafter notified the circuit court that it was still missing releases from some subcontractors; however, before the circuit court could resolve that dispute, SEC initiated the appeal that was the subject of SEC I. Following the release of our opinion in SEC I, the circuit court again took up the matter and, on January 9, 2013, issued its order holding that WAR had attempted to comply with the requirement imposed upon it to produce releases when it filed its May 13, 2011, notice of compliance and that, “therefore, the interest awarded by the arbitrators is applicable from May 13, 2011, .to the date of payment to the clerk.” Although SEC subsequently appealed the January 9 order, WAR did not. Thus, for all that appears, WAR had no complaint with the circuit court’s holding regarding the date interest should begin to accrue, and, had this Court concluded in SEC II that all the submitted releases were adequate, the circuit court’s judgment would have been affirmed, and WAR would have received interest from that May 13 date set by the circuit court. Because the circuit court’s judgment would have been wholly affirmed in such a scenario, WAR, as the prevailing party, would not have been entitled even to file an application for rehearing challenging the calculation of interest because it had not first raised that issue in its own appeal. See Rule 40(a), Ala. R,App. P. (“A party who has not prevailed may apply for a rehearing.... ” (emphasis added)).
Of course, this Court did not in SEC II conclude that all the releases were adequate, and the cause was instead remanded to the circuit court for further pro *369 ceedings so that WAR could procure and provide proper releases. However, before doing so, we further noted that the circuit court had “erred in finding that WAR had ‘attempt[ed] to comply with what the Supreme Court has ordered this court to implement as of May 13, 2011,’ and that it was entitled to have interest owed under the arbitrators’ award and the May 9 judgment calculated from that date.” 159 So.3d at 1238. The clear implication of this statement — in light of the total lack of any argument by WAR at this time that it was entitled to interest from February 16, 2011 — is that interest was to begin to accrue only when, in fact, the circuit court could confirm that WAR had actually complied with the requirement imposed upon it to produce the required adequate releases, not merely made an attempt to do so. That date was September 8, 2014.
WAR first made the claim that interest began to accrue on February 16, 2011, in an application for rehearing filed after our opinion in SEC II was released; however, that argument had already been waived at that point because it was not made earlier. Randolph, 833 So.2d at 608. Thus, post-RAC II, both the circuit court and this Court had indicated that interest would not be calculated based on the date of the arbitration award; rather, interest would be tied to the date the court confirmed that WAR had produced the ordered releases. SEC II merely made it clear that it was the date the court confirmed actual compliance, not attempted compliance, that mattered. Accordingly, the question whether WAR was entitled to interest from February 16, 2011, was effectively answered in the negative at this point, and that answer became the law of the case. This Court has explained the law-of-the-case doctrine as follows:
“ ‘ “Under the doctrine of the ‘law of the case,’ whatever is once established between the same parties in the same •case continues to be the law of that case, whether or not correct on general principles, so long as the facts on which the decision was predicated continue to be the facts of the case.” Blumberg v. Touche Ross & Co., 514 So.2d 922, 924 (Ala.1987). See also Titan Indem. Co. v. Riley, 679 So.2d 701 (Ala.1996). “It is well established that on remand the issues decided by an appellate court become, the-‘law of the ease,’ and that the trial court must comply with the appellate court’s mandate.” Gray v. Reynolds, 553 So.2d 79, 81 (Ala.1989).
“Southern United Fire Ins. Co. v. Purma, 792 So.2d 1092, 1094 (Ala.2001). In the words of Justice Holmes, the doctrine of the law of the case ‘merely expresses the practice of courts generally to refuse to reopen what has been decided — ’ Messinger v. Anderson, 225 U.S. 436, 444, 32 S.Ct. 739, 56 L.Ed. 1152 (1912)(emphasis added).”
Bagley v. Creekside Motors, Inc., 913 So.2d 441, 445 (Ala.2005).
We further discussed the law-of-the-case doctrine in SEC II with regard to SEC’s repeated argument that it was permanently excused from paying the arbitration award because WAR did not submit the required releases -by the date originally ordered by the arbitration panel, citing Scrushy v. Tucker, 70 So.3d 289, 303-04 (Ala.2011), for the principle that a party cannot, in a subsequent appeal, “ ‘ “ ‘reliti-gate issues which were resolved by the Court in the first appeal or which would have been resolved had they been properly presented in the first appeal.””” 159 So.3d at 1235-36 (quoting Kortum v. Johnson, 786 N.W.2d 702, 705 (N.D.2010), quoting in turn State ex rel. North Dakota Dep't of Labor v. Riemers, 779 N.W.2d 649 *370 (N.D.2010) (emphasis omitted)). WAR’S argument that interest should accrue from February 16, 2011, would have been considered had it been properly presented; however, it was not, and the issue was finally decided in SEC II. WAR could not revive the issue via the application for rehearing filed after the release of our opinion in SEC II, and our decision became the law of the case. Accordingly, the circuit court erred on remand by entering a judgment that did not comply with SEC //'inasmuch as it awarded interest based on the date' Of the arbitration award and not based' oh' the date WAR' filed notice with the circuit court that it had complied with the requirement that it produce the ordered releases.
'V.
Following the decision of this.Court in SEC II, the circuit court entered a judgment holding that WAR had finally provided the releases necessary to obligate SEC to pay the outstanding $263,939 judgment previously entered by the court on an arbitration award obtained by WAR against SEC, along with interest accruing from February 16, 2011 — the date the arbitration award was-made. ■ We now affirm that judgment to the extent it holds that WAR has provided all required releases and that SEC is now obligated to fulfill the judgment entered on the arbitration award. However, we reverse the judgment inasmuch as it holds that SEC is required to pay interest on the award as calculated from February 16, 2011. On remand, the circuit court is instructed to calculate interest on the principar at the rate set forth in the arbitration award accruing from September 8,2014.
■AFFIRMED IN PART; REVERSED IN PART; AND REMANDED.
MOORE, C.J., and BOLIN, PARKER, MURDOCK, SHAW, MAIN, WISE, and ■ BRYAN, JJ., concur.

. The arbitration award and ensuing judgment entered by the circuit court on that *362 award was for $373,939; however, SEC and WAR subsequently agreed to reduce that amount by $110,000 as part of a settlement agreement between WAR and a third party in a separate case,

. A subsequent order entered by the circuit court indicates that the arbitration panel, when approached by the parties, refused to take any further action regarding the arbitration award.

. SEC also argues in its brief that the circuit court erred by ordering it to pay WAR within *367 three days of the entry of its November 24, 2014, order inasmuch as Rule 62(a), Ala. R. ,Civ, P., generally provides that "no execution shall issue upon a judgment nor shall proceedings be taken for its enforcement, until the expiration of thirty (30) days after its entry,” However, after SEC initiated this appeal, we granted its application for a stay of execution, thus mooting SEC’s argument in this regard. . ..

. It bears noting that the arbitration panel contemplated that the releases would be provided and final payment would be made no later than May 13, 2011, approximately three months after the initial award was made — not more than four years later.